The plaintiff brought this action to recover damages alleged to have been occasioned by the negligence of defendant, in that while he was in the regular discharge of his duty as mail agent in one of the cars attached to and forming part of one of defendant's regular passenger and mail trains, in motion, the same was thrown violently from the track, and he sustained serious physical injuries.
The defendant denied the material allegations of the complaint, and the following issues were submitted to the jury:
1. Was the plaintiff damaged by the negligence of the defendant?
2. What damage, if any, did plaintiff sustain by the negligence of the defendant?
It was in evidence from both plaintiff and defendant that plaintiff, while in the discharge of his duties as mail agent on one of the regular passenger trains of defendant, received injuries by the (464) train leaving the track at a switch about a half-mile from Johnson street station in Raleigh, on Friday, 6 February, 1889; that after the accident the pin which held the switch in place was missing, and has never been found; that at the place of the accident there is a decided curve, the switch being on the outside; there were three tracks: one called a spur track, built to hold idle cars, and unconnected with the *Page 330 
other tracks at its end nearest the scene of the accident; one a sidetrack, connected with the main track by the switch in question, and the main track; that at the time of the accident there were no cars on the spur track, but there were fourteen cars standing on the sidetrack, but far enough away to permit trains to pass on the main track with safety; that when the train left the main track at the switch, it ran for a short distance over the crossties and into the cars standing on the sidetrack with great force, badly breaking the engine and several of the standing cars; that prior to the accident the roadbed and switch at the place of accident, as well as the engine and cars, was in good condition, and the employees of the defendant company, whose duty it was to superintend and operate them, were competent and efficient.
Lewis Wrenn, who was conductor in charge of the train, was examined as a witness for the defendant. On the cross-examination, the witness was asked, "Was there not a similar accident near the same place a little before or after this accident by the train running off, run by the same engineer and conductor?" Objection by defendant. Objection sustained, and the plaintiff excepted.
Subsequently, Rufus Horton was examined as a witness for the defendant, and testified that he was the engineer in charge of the derailed train. On his cross-examination the plaintiff was permitted to ask this question: "Have you had another accident shortly prior to this accident?" To which he answered, "I have not for a number of years." He was then asked, "Were there any accidents shortly after this (465) one?" To which question answered, "I had an accident shortly afterwards, about two hundred yards above the place of this accident; at the other end of the switch. That switch was probably changed by mistake. I did not get off the track; I ran on the sidetrack and into cars standing on it. There was no switch broken; I was only turned on the wrong track by a mistake of some one changing the switch."
Counsel for the plaintiff stated that this was the accident they desired the witness Wrenn to testify to, who was admitted to have been the conductor in charge of the train on this occasion also.
On the cross-examination of T. H. Pleasants, a witness for the defendant, he was asked by the plaintiff, "If the end of the switch had worn, and the flanges of the wheels caught on it, might not the engine open the switch, coming from either direction?" Objection by the defendant, and objection sustained, for there was no evidence that this switch had worn, and the defendant excepted.
J. R. Thrower, a witness for the defendant, had previously stated, in explaining a model of the switch in use, "The point of the switch would wear after a long time, but would wear thinner." *Page 331 
Rufus Horton had testified that "the points of switches wear some."
W. A. Green had testified, "I examined the switch Wednesday before the accident, and it was in good order."
The plaintiff offered to prove the condition of the track at or near the "Round House" and within the yard limit presided over by the same section master as the road at the point of the accident. Objected to by the defendant. Objection sustained, and the plaintiff excepted.
The plaintiff asked a witness, "What is the present condition of the switches in the yard limit?" Objection by the defendant. Objection sustained, and the defendant excepted.
The plaintiff asked the following special instructions: (466)
1. That defendant railroad is a public carrier, and is required to use the greatest care and utmost diligence and good faith in providing for the safety of its passengers, both as to life and limb.
2. The defendant is required, by the nature of its calling, to provide the safest cars, the safest engines, the safest roads, the safest switches, and the safest and best and most competent employees and servants the nature of its business permits; and if it failed to provide them, or any of them, and the plaintiff was thereby injured, he is entitled to recover to the extent of injuries.
3. If the plaintiff has shown, and the jury believe, that he was injured in the manner described by him, by the accident, or wreck, on defendant's road, the law presumes that the injury was by the defendant's negligence, and the burden is upon the defendant to show that the wreck was not by his fault, and that he used the utmost care and diligence to prevent it.
4. The law requires that the defendant shall not only have efficient and competent servants, but should have them in sufficient numbers to provide against every reasonable contingency.
5. Switches are points and parts of a road at which accidents are liable to occur unless closely attended to, and defendant is held to the utmost diligence, care and watchfulness in selecting the safest patterns in the start and in keeping them in perfect order.
6. Leaving cars on such a sidetrack, so close to such a switch as that the train going at the usual speed of thirty or thirty-five miles an hour and rushing out upon such sidetracks could not have been stopped in time to prevent a collision, is negligence.
7. If the jury believe that the accident and injury to the (467) plaintiff occurred in consequence of a misplaced switch, then the evidence offered by the defendant is not sufficient to rebut the presumption of negligence, and the jury should find the first issue "Yes."
The court gave substantially the first, second, third, fourth and fifth special instructions asked by the plaintiff, and refused the sixth and seventh, and the plaintiff excepted. *Page 332 
The court charged the jury as follows: "In this case the burden of proof is upon the plaintiff to show, by a preponderance of the evidence, that he was injured by the negligence of the defendant, and if he has not so convinced the jury they will answer the first issue `No.' Unless he has shown the jury by a preponderance of the evidence that the injury was occasioned by an act which, with proper care, or by machinery which, with proper use and care, would not ordinarily produce damage, if he has so satisfied the jury, then he has made what the law terms a prima facie case of negligence, and the laboring oar is shifted to the defendant, and the defendant must show by a preponderance of evidence that the company has not been guilty of negligence, and the reason for this is that it is much easier for those who do the damage to show the exculpating circumstances, if such exist, than it is for the plaintiff to produce proof of positive negligence." To this instruction the plaintiff excepted.
The court further charged the jury: "To render the defendant liable, the injury must be the natural and probable consequence of the negligence, such a consequence as, under the circumstances, might or ought to have been foreseen by the wrongdoer as likely to result from his act." To this instruction the plaintiff excepted.
The court further charged the jury: "The defendant claims to have rebutted this presumption of negligence by showing that the only way the accident could have occurred was by the pin having been taken out of the switch by some evil-disposed person other than the defendant (468) and its agents. If the defendant has satisfied the jury that this is true, then the defendant has not been guilty of negligence, and the plaintiff cannot recover." To this charge the plaintiff excepted.
The court further charged the jury: "If the defendant has not so satisfied the jury, and the jury believe that the accident may have occurred in some other manner than by the switch-pin having been so removed, then the defendant must satisfy the jury that it has not in other respects been negligent; and in that view, the court charges the jury that it is not negligence in the defendant company not to have a guard or watchman at the switch." To which charge the plaintiff excepted.
The court further charged: "It was not negligence to place box-cars on the sidetrack, unless they were near enough to interfere with travel on the main track." To which charge the plaintiff excepted.
The court further charged: "If the jury believe that the defendant used the safest and best switches obtainable, and other safest machinery; employed competent officials in their respective capacities; caused the switch and road to be examined carefully every two or three days; that this switch was examined carefully on Wednesday preceding the accident; that a number of trains passed over the switch the same day; that *Page 333 
the switch was operated successfully that morning and nothing was discovered to be wrong with it; that the engineer, in his proper place, noticed and saw that the signal showed the main track to be open, and that only human agency could enable the target to show safety when the switch was partly open, which caused the wreck, then the defendant has not been guilty of negligence, and the plaintiff cannot recover, for the defendant must use the highest degree of care that a reasonable man could use." To which charge the plaintiff excepted. "But if the jury are not so satisfied by the defendant they will answer the first issue `Yes,' and will proceed to the second issue." (469)
There was a verdict for the defendant.
Rule for a new trial and venire de novo by the plaintiff for error in the rejection of evidence set out in exceptions one, two, three and four, and for refusing the special instructions asked for and set out in exceptions five and six, and in those given as set out in exceptions seven, eight, nine, ten, eleven and twelve. Rule discharged. Judgment, upon the verdict, for the defendant. Appeal by the plaintiff.
As to the first exception, if it be granted, that the court should have allowed the question to be answered, it appears that another witness of the defendant upon cross-examination, was afterwards allowed to testify that an accident, subsequent to that alleged in the complaint, had happened, and the counsel for the plaintiff said this was the one he desired the first witness to give evidence of. It was not questioned by the defendant that such second accident did occur, and hence the plaintiff had the benefit of the evidence in as full measure, in every aspect of the case, as if the first witness referred to had given the same. The exception is, therefore, without force.
Nor has the second exception any merit. The witness referred to was not examined as an expert, nor does it appear that he was an expert, or that he was skilled in such matters as the question had reference to. The question he was not allowed to answer was based upon a hypothetical state of facts and was intended to elicit his opinion. The answer, if the same had been received, could have served no proper purpose, because "there was no evidence that this switch had worn." It is (470) so stated in the case, and no such evidence appears. There was evidence going to prove that the switch was in good condition. Evidence that trains had passed over the same for about two years did not of itself constitute evidence to prove that the switch had worn so thin as to prove negligence in that respect. *Page 334 
The evidence to which the third and fourth exceptions refer was properly excluded. The condition of the defendant's railroad track at places other than that at which the accident in question happened could not prove or disprove the condition of the track at the latter place. Such evidence would afford ground only for uncertain inference, mere conjecture, and it would certainly tend to mislead and confuse the jury. The same may be said of the evidence of the "condition of the switches in the yard limit," at the time of the trial.
We think the plaintiff has no just ground of exception to the instructions complained of that the court gave the jury. Indeed, it is questionable whether, in some respects, they were not too favorable to him.
The evidence went to prove the accident whereby the plaintiff sustained injury, and that it may have been, and probably was, occasioned by the absence of an important bolt, the purpose and use of which were to hold the "switch" in its proper place. There was no evidence going to show what otherwise could have given rise to it. The principal inquiry was whether the defendant negligently allowed that bolt to be out of its place.
It seems that only such parts of the instructions to the jury as were excepted to are set forth in the record. But it certainly appears that the court very fully, in substance, told the jury that if the plaintiff had satisfied them that his "injury was occasioned by an act which, with proper care or by machinery, which with proper use and care, (471) would not, ordinarily, produce damage," then the burden was on the defendant to prove that it was not chargeable with negligence. This was clearly sufficient and in harmony with numerous decisions of this Court. Ellis v. R. R., 24 N.C. 138; Aycock v. R. R., 89 N.C. 321, and cases there cited; Moore v. Parker, 91 N.C. 275; Railroad Accident Law, 433 et seq.; 3 Lawson Rights and Remedies, sec. 1213; Lawrence v. Green,70 Cal. 417.
The court properly declined to give the jury the sixth special instruction asked for by the plaintiff. Leaving cars standing on a sidetrack is not of itself negligence; certainly it is not when the cars are not in the way of trains passing on the main track. A train moving on the main track of a railroad cannot go upon a sidetrack if the two tracks are respectively in order. It is not negligence to do what may be done in the regular course of business, if, in the nature of the matter, harm does not arise therefrom, unless occasioned by some negligence. Sellars v. R.R., 94 N.C. 654. The plaintiff was not entitled to the seventh instruction asked for by him, because, clearly, there was evidence from which the jury might find that the defendant was not chargeable with negligence. Indeed, the evidence went strongly to prove its active diligence. *Page 335 
Other minor objections to the instructions given are groundless, and are fully met by Sellars v. R. R., supra, and Doggett v. R. R., 78 N.C. 305.
No error.
Cited: Ice Co. v. R. R., 126 N.C. 797, 800; Williams v. R. R.,130 N.C. 121; Cheek v. Lumber Co., 134 N.C. 228; Stewart v.R. R., 137 N.C. 689; Hemphill v. Lumber Co., 141 N.C. 489;Winslow v. Hardware Co., 147 N.C. 279; Skipper v. Lumber Co., 158 N.C. 323;Forbes v. Rocky Mount, 165 N.C. 15.
(472)