PETER J. SODERMAN, Respondent, *v.* WILLIAM KEMP et al.,
Appellants.

In an action to recover damages for alleged negligence these facts appeared:
The T. S. & I. Co., the original defendant, used cars drawn by a loco-
motive for the purpose of removing its furnace refuse.   Plaintiff, an
employee engaged in assisting in this work, was riding on top of the
load of a car, when it suddenly dumped, throwing plaintiff on the
ground and causing the injury complained of.   The car dumped on one
side only, and the body when in place was fastened to the truck and
held in position by means of two hooks; when these were properly
adjusted to the bar upon the truck the car body could not overturn.
It was the duty of the employees after the car was dumped to crank it
back into place and adjust the hooks.   The car had made one previous
trip on the morning of the accident.   On the previous trip after the car
was unloaded it was cranked back and the hooks attached by two
other employees.   The car with others of a similar pattern had been
in daily use for several years.   On the return trip after the accident the
car was examined by the car repairer, who found nothing the matter
with the hooks or the car; it was again put in use without anything
having been done to it, and it was in continuous use thereafter.   No
similar dumping of the car was shown to have occurred either before or

after the accident. It was claimed that one of the hooks was slightly straightened toward the point, but it did not appear that its holding power was affected or that the alleged defect had anything to do with the overturning of the car or was of such a nature as to prevent the continued or safe service of the car, or to require any repair. *Held,* that the evidence did not justify a recovery; that the natural inference was the accident was caused by the negligence of plaintiff's co-employees in failing to properly adjust the hooks after the car was dumped on the first trip.

*Soderman* v. *Troy Steel & Iron Co.* (70 Hun, 449), reversed.

(Argued March 8, 1895; decided April 9, 1895.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made May 9, 1893, which affirmed a judgment in favor of plaintiff entered upon a verdict.

This action was brought against the Troy Iron and Steel Company, the original defendant, to recover damages for injuries received by plaintiff alleged to have been caused by said defendant's negligence.

The facts, so far as material, are stated in the opinion.

*R. A. Parmenter* for appellant. Upon the whole evidence, or any reasonable construction of it, this action ought not to be maintained, and the judgment affirming the verdict should be reversed. (*Ungar* v. *F. S. S. R. Co.,* 57 N. Y. 500.) A non-suit is the proper remedy when the trial judge can see that the plaintiff, upon whom the onus of proof rests, has failed to produce such evidence as will justify a verdict in his favor. (*Dwight* v. *G. L. Ins. Co.,* 103 N. Y. 359; *Corcoran* v. *D., L. & W. R. R. Co.,* 47 N. Y. S. R. 147; *Arnold* v. *D. & H. C. Co.,* 125 N. Y. 15; *DeGraff* v. *N. Y. C., etc., R. R. Co.,* 76 id. 125; *Crown* v. *Orr,* 140 id. 450; *Dingley* v. *S. K. Co.,* 134 id. 552; *Shields* v. *N. Y. C., etc., Co.,* 133 id. 557; *Dana* v. *C. P. I. Co.,* 51 N. Y. S. R. 238; *Williams* v. *D., L. & W. R. R. Co.,* 116 N. Y. 628.) The trial judge erred in declining to charge as requested, that the jury might disregard the testimony of defendant's wife without any direct contradiction. (*Elwood* v. *W. U. T. Co.,* 45

N. Y. 549, 554; *Kavanaugh* v. *Wilson,* 70 id. 179; *Gilder-sleeve* v. *Landon,* 73 id. 609; *B. C. R. Co.* v. *Strong,* 75 id. 591; *Koehler* v. *Adler,* 78 id. 291, 292; *Wohlfahrt* v. *Beckert,* 92 id. 497, 498; *Kearney* v. *Mayor, etc.,* 92 id. 621; *Supple* v. *State,* 99 id. 289, 290.)

*James Lansing* for respondent. The plaintiff's testimony tended to show a defective car and his injury thereby, through the negligence of the defendant. (*Steinweig* v. *E. R. Co.,* 43 N. Y. 123; *Caldwell* v. *N. J. S. Co.,* 47 id. 288.) The plaintiff was injured solely by the negligence of the defendant. Every master using machinery in his business owes the duty to his employees: (1) To furnish safe and suitable machinery; (2) to keep it in repair; (3) to use proper inspection for the purpose of discovering defects which may arise from its use. (*Fuller* v. *Jewett,* 80 N. Y. 46; *Bailey* v. *R., W. & O. R. R. Co.,* 139 id. 302; *Wright* v. *R., W. & O. R. R. Co.,* 25 id. 566; *J. R. M. Co.* v. *N. H. S. Co.,* 50 id. 121, 127; *Seybolt* v. *N. Y., L. E. & W. R. R. Co.,* 95 id. 568.) The exceptions taken to the admission of evidence, and to the charge of the court, are untenable. (*Baird* v. *Daily,* 68 N. Y. 551; *Hine* v. *Bowe,* 114 id. 350; *Moody* v. *Osgood,* 54 id. 488; *Elwood* v. *W. U. T. Co.,* 45 id. 549; *Kelly* v. *Burroughs,* 102 id. 93.)

GRAY, J. The plaintiff has recovered damages against the defendant for personal injuries sustained by him, upon a claim that it was negligent. In our judgment, the evidence was altogether insufficient to establish any cause of action and the defendants' motion for a non-suit should have been granted. There was nothing disclosed in the circumstances surrounding the occurrence, which evidenced any failure of that duty which the defendant owed to the plaintiff as its employé, and it was error to submit the case to the jury for a verdict, when no inference of neglect was possible.

The defendant was engaged in the manufacture of steel and iron and the plaintiff had been in its employ as a laborer for

about nine years.    In August, 1888, he was directed to assist in loading up slag, sand and dirt from the defendant's pit upon a car.    The car was one that dumped its load on the side and was in a train, which was drawn by a locomotive to a point, or "dump," at some distance from the works.    The plaintiff and another man, who had helped him to load the car, rode upon it; the plaintiff sitting upon the top of the load and his associate upon the end of the car.    They had made one trip that morning and, at the time of the accident, were making a second trip to the dump.    After they had proceeded a short distance from the works, the car suddenly dumped and threw the plaintiff upon the ground.    He says that he struck upon his face and shoulder and that an iron bar fell upon him, as well as a large part of the load; as the result of which he was seriously injured. The defendant used three kinds of cars for the purpose of carrying away the furnace refuse.    Some were double side dumpers; some dumped on both sides and at the end and some, like the one upon which the plaintiff rode, dumped only on the one side.    The car in question was, in some respects, of an older pattern than the others.    The mode of fastening the car body to the truck was by means of two hooks, which were attached to a fixed bar upon the car truck and which served, when in place, to hold the car body in position and to prevent it from dumping.    It was the duty of the men employed about the car, after it was dumped, to crank it back into place and to adjust the hooks.    Upon the morning in question, the plaintiff says that upon the first trip down to the dump, and after the car had been unloaded, it was cranked back and the hooks were attached by two of the men on the train.    The plaintiff did not look to see if the hooks were on, upon either trip; and he does not claim to have discovered any thing wrong about the car on either trip, up to the time of the accident.    Neither does he personally give any account of the car immediately after the accident.    In order, however, to attribute the cause of the accident to some negligence on the part of the defendant, he called and examined several witnesses, who were fellow-laborers with him.    Their evidence

failed to make out any case, however, and even tended to discredit his own story as to the manner in which he was injured — an unimportant matter, however. One witness was the brakeman on the dumping train, who was riding at the time upon the engine. The train was composed of five or six cars, and was proceeding at the moderate speed of about three miles an hour, and, when the car dumped, was stopped almost immediately. The brakeman saw the dumping and went back to where the plaintiff was sitting upon the ground. He says that that was the only time he had ever seen the car dump in that way; that he had never seen it dump with the hooks on; that he saw nothing the matter with the hooks when he went back to where the plaintiff was. Another witness, who was riding upon the engine, saw the accident, and, after the train had backed to the furnace and the car in question had been put upon the side track to be repaired, if needed, he told the car repairer of the defendant, that the car had dumped and that he thought one hook was slightly bent or straightened. The car repairer looked at the hook, but, finding nothing the matter, did not take the car to the shop for repairs. The car was again put in use without anything being done to it and continued to be used. Two or three months after the accident, the plaintiff went with a draughtsman to the works for the purpose of finding the car and of examining it. He found a car in the yard house, which was a single side dumper, and pointed it out to the draughtsman as being the one which had thrown him off. The draughtsman was examined as a witness for the plaintiff and testified that the hooks on the car shown him had been either repaired, or were new hooks. He also testified that the car was defective in certain respects. In describing the car which he saw, he said that the door, or board, on the side, which opened for the discharge of the load, was hinged at the top and opened from the bottom outward. The plaintiff did not identify the car by any number, and that it was the identical car was made altogether improbable by the testimony of the plaintiff's own witnesses, who described the one in use at the time of the acci-

dent as having a door on the side, which was attached by hinges to the bottom of the car and was fastened by hooks at the top. The evidence with reference to the description of the car by the plaintiff's witnesses, who were with him at the time of the accident, was corroborated by that of the witnesses for the defendant; who were the engineer upon the locomotive, the car repairer and the foreman of the laboring force. They all testified positively that the car in use at the time had its side board, or door, attached by hinges at the bottom of the body and was hooked at the top. The car repairer testified that the company had no single side dumpers in use, that had the side open at the bottom. With respect to a possible defect in one of the hooks which held the body of the car in place, there was not only no evidence that it had been so bent, or that it was so out of order, as to be unserviceable; but all the evidence was to the effect that its usefulness was unimpaired. The car was placed upon the side track, on the return trip, merely because it had dumped, and in order that it might be examined, and to see if it needed repairs. It was not sent to the repair shop. No defect was found about the car gear and it was put within half an hour back upon the train and, as some of the witnesses testified, it worked all right. It was in continuous use thereafter and was never known to have been taken out of the service. The bending or straightening of the hook, which plaintiff's witness had spoken of in his testimony, was described as being a slight straightening towards the point of the hook; but its holding power was not affected. The draughtsman in the employ of the defendant made a diagram of the car, after having been shown it by the car repairer, who had marked the car, and he described it in all its details. The case was, therefore, left, upon all the evidence, without any other proof in aid of the plaintiff's complaint than that the car had overturned with him, and the defect, upon which he relied for the purpose of establishing a neglect of duty on the part of his employer, could only consist in the feature of the slightly straightened point of the hook. But there is no evidence in

the case, which shows that that had anything to do with caus-
ing the overturning of the car, or that it was of such a nature
as to require any attention or repair, or such as to prevent the
continued and safe service of the car.

Nor does the evidence show that the car was unfit for the
purposes for which it was used. With several others of a
similar description, it had been used for years and was con-
tinued in use. While there were other cars of more or less
different construction and design, nothing in the evidence
warrants the inference that its use was a source of danger to
the defendant's employés.

The defendant was bound to furnish safe appliances and
cars in the transaction of that part of its business; but it was
not bound to furnish the most approved, or newest, design of
dump cars, or any particular description of such cars; so long
as those which it did furnish were not dangerous to those who
had to work in and about them. This car had been in daily
use for a long time and had proved itself safe and there was
no evidence that it was otherwise. Its continued use was
proper enough. It was proved in the case that, when the
hooks on the car body were adjusted to the fixed bar upon
the truck, the car could not overturn; but, if they were not
so adjusted, it was quite possible, if any considerable move-
ment was communicated to the car body, by the motion of
the train from the unevenness of the track, or from any other
cause, that the car might overturn. Upon the evidence, there
is a very natural inference, which can be drawn to account
for the accident, and that is that the fellow-workmen of
the plaintiff had neglected to properly adjust the hooks,
after the car had been dumped upon the first trip. That
duty belonged to the laborers upon the train and, if it was
not properly performed, any resulting accident would not be
attributable to the defendant's, but to their neglect.

If the plaintiff had given any evidence going to show that
there was some defect about this car, or its gear, which made
its use improper, we might then have a case where a conflict

between his evidence and the evidence on the part of the defendant might fairly be submitted for the consideration of the jury; but there was no such conflict. The evidence is overwhelming to show, that the car, which the plaintiff pointed out to his draughtsman for the purpose of description to the jury, could not have been the car from which he fell. His own testimony, that it was the same car, is not only not substantiated by some identification, as by a mark or number; but it was contradicted by the evidence of his own witnesses, as well as by that of the defendants'.

So far as appears from the evidence, if the accident was not caused by some neglect on the part of the plaintiff's fellow-workmen, in properly adjusting the hooks of the car, it was an unexplained occurrence, which does not permit of any inference of some neglect on the part of the defendant; or, where, to put the case at its strongest, the inference of an entire freedom from any failure of duty on the part of the defendant is quite as consistent, upon the evidence, as an inference that there had been in some manner an omission of a duty. A recovery in these cases must rest upon affirmative evidence of some violation or neglect of duty. The burden is upon the plaintiff to negative the presumptions in favor of his employer, and it is not enough that he shows an injury sustained, but he must go further and show some specific act of negligence.

The judgment appealed from should be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.