ALLEN W. MALLERY, ASSIGNEE OF JOHN B. CONTEE ET AL. *vs.* JEMIMA C. QUINN ET AL.

*Equity Practice— Vacating Enrolled Order upon Petition— Unauthorized Release of Mortgage by Trustee upon Ex Parte order.*

When a decretal order in an equity case was passed *ex parte* and without a hearing upon the merits, it may, after enrolment, be vacated upon petition, when the court is satisfied that the decree should be set aside, or was entered by surprise or mistake, and will operate as a fraud upon the rights of others.

A trustee of two different estates invested a sum of money, one-half of which belonged to each estate, in a mortgage from A. to the trustee. Subsequently A. became entitled, as a dis-

tributee of one of the trust estates, to a sum in excess of the whole mortgage debt.   Upon her application, an *ex parte* order was passed in the equity cause, in which both trusts were being administered, by which the trustee was authorized to release the mortgage and charge the amount thereof against the sum payable to A. out of one estate.   The trustee was then insolvent and a defaulter to both estates.   *Held*, that the Court had no authority to empower the trustee to pay A. her share of one estate with funds belonging to the other trust estate; that the release of the mortgage was a breach of trust in which A. and the trustee participated and must be cancelled, and that A. is bound to make good to the other trust estate the amount of her indebtedness to it.

Appeal from an order of the Circuit Court for Prince George's County (MERRICK, J.) dismissing the appellant's petition.

The cause was submitted to the Court upon briefs filed by *John B. Contee* and *Duckett & Dent* for the appellants, and *Charles H. Stanley* and *Jos. K. Roberts* for the appellees.

MCSHERRY, C. J., delivered the opinion of the Court.

There are two questions presented by this record. One is a question of equity pleading, and the other involves the merits of the controversy.   The order appealed from was based exclusively on the technical ground raised by the first inquiry, but the appeal brings both before us for final decision.   These two questions arose in the following manner:  Under the will of John D. Bowling an annuity of five thousand dollars was bequeathed to his wife, Elizabeth Bowling.   He directed John Bowling, Joseph K. Roberts and Henry W. Clagett, trustees, to set apart and to hold in trust a sufficient portion of his estate to raise this annuity. He further provided by the residuary clause that upon the death of his widow, the *corpus* of the trust fund yielding this annuity should be divided amongst his children, to be held by or for them subject to the limi-

tations prescribed with regard to other property devised and bequeathed to them respectively by antecedent clauses of his will. By one of these antecedent clauses —the sixth—there had been given to the same trustees considerable property to be held in trust for Mrs. Contee, one of the testator's daughters, during her life, and there was superadded a power of appointment in her and a limitation over of the property to her children, upon her death, in default of the execution of that power. Both John Bowling and Joseph K. Roberts died and Henry W. Clagett became sole trustee under a decree passed by the Circuit Court for Prince George's County in equity cause No. 1031 on the Equity Docket of that Court. When ultimately, in September, eighteen hundred and ninety-six, Henry W. Clagett, the sole and the surviving trustee, was forced to state an account, it was discovered that he was a defaulter to the Elizabeth Bowling trust fund, out of which the annuity issued, to the extent of forty-seven thousand eight hundred and seventy dollars; and that he was likewise a defaulter to the Mrs. Contee trust fund—the fund arising under the sixth clause of the will—to the amount of thirteen thousand and sixty-nine dollars. John Bowling, the son of the testator John D. Bowling, and one of the trustees under his will, died sometime in the year eighteen hundred and eighty-seven, leaving a last will and testament under which his widow, Jemima Bowling, became entitled to that portion of the estate of John D. Bowling which had been devised and bequeathed to John Bowling both directly and under the residuary clause. In November, eighteen hundred and eighty-seven, after the death of John Bowling, Jemima Bowling, his widow and legatee and devisee, borrowed from Joseph K. Roberts and Henry W. Clagett, the then surviving trustees, the sum of three thousand dollars. Of this amount the sum of fifteen hundred dollars belonged to the trust estate of Mrs. Contee, under the sixth clause of John D. Bowling's will, and the other sum of fifteen hundred dollars belonged to the Elizabeth Bowling trust fund. Two single bills, each for the sum of fifteen

hundred dollars and each payable in five years, were
given by Jemima Bowling to the trustees.   To secure
the payment of these two single bills she executed a
mortgage upon real estate owned by her and previously
acquired in the partition of her deceased father's estate.
These two single bills confessedly and incontrovertibly
represented investments of trust funds.   Mrs. Jemima
Bowling had no interest whatever in the Contee trust
funds.   No part of those funds was payable to her in
any contingency or under any circumstances.   As leg-
atee of her deceased husband she had a one-sixth inter-
est in the Elizabeth Bowling trust funds.   In October,
eighteen hundred and ninety-three Mrs. Elizabeth Bowl-
ing died.   Under John D. Bowling's will the trust fund
out of which the annuity issued was then distributable.
In August, eighteen hundred and ninety-four, Mrs.
Contee died without having executed her power of ap-
pointment, and the fund held by Clagett in trust during
her life under the sixth clause of the will as well as one-
sixth of the Elizabeth Bowling trust fund, ought then to
have been distributed to Mrs. Contee's children. Clagett,
then being the sole trustee, was dilatory in making a
settlement.   Mrs. Jemima Bowling had married again,
her second husband being Harry E. Quinn.   Mrs.
Jemima Bowling, then Mrs. Quinn, being indebted to
both the Contee and to the Elizabeth Bowling trusts,
and at the same time being entitled to a part of the latter
trust funds under the will of her former husband, and
Clagett failing to make a settlement, caused a petition
to be prepared, addressed to the Judges of the Circuit
Court for Prince George's County.   In that petition
she set forth, that there was due to her as the widow and
legatee of John Bowling a portion of the funds belong-
ing to the Elizabeth Bowling trust, which portion was
largely in excess of the amount due by her under the
mortgage to the Contee and the Elizabeth Bowling
trusts combined; and she prayed that Clagett might be
empowered to release the three thousand dollar mort-
gage and charge the amount thereof against the funds
in his hands payable to her out of the Elizabeth Bowling

trust funds. In other words, she asked that the mort-
gage securing the fifteen hundred dollars due to the
Contee trust estate be released and that Clagett reim-
burse that estate out of the funds in his hands payable
to Mrs. Quinn out of the totally independent Elizabeth
Bowling trust estate. This petition was sworn to by
Mrs. Quinn. Clagett subscribed his assent to the pas-
sage of the order prayed for, and on the fifth of May,
eighteen hundred and ninety-four, Judge Crane signed
an order authorizing Clagett to release the entire mort-
gage and " to charge the amount secured by said mort-
gage against the portion or share coming to Jemima C.
Quinn from said Henry W. Clagett, surviving trustee of
Elizabeth Bowling, now deceased." This petition, the
affidavit thereto, the assent by Clagett and the Court's
order thereon were filed on May the *eighth*, eighteen
hundred and ninety-four, in equity cause No. 1031 in
the Circuit Court for Prince George's County. This
order was simply an *ex parte* order. The papers upon
which it was founded were not filed before the order
was obtained, and none of the beneficiaries of the Contee
trust fund were notified or given an opportunity to be
heard. The day following the date the order was filed
Clagett executed a release of the three thousand dollar
mortgage. The effect of this proceeding and the re-
lease, if sustained, is to destroy the fifteen hundred dollar
mortgage security held by Clagett for the benefit of the
Contee trust, and to substitute in its stead the personal
liability of Clagett who at that time was hopelessly in-
solvent and besides was an actual defaulter to both trust
estates. If the release stands Mrs. Quinn escapes pay-
ing back to the Contee trust fund the money she actu-
ally borrowed from it, though she has the means with
which to pay; and the Contee trust estate will be forced
to seek reimbursement from an utterly insolvent trustee;
whilst Mrs. Quinn will realize in the final distribution of
the Elizabeth Bowling trust funds a much larger share
than any of the legatees under the residuary clause of
John D. Bowling's will.

When the next of kin of Mrs. Contee discovered what

had been done they filed on September the twentieth, eighteen hundred and ninety-five, in the same equity cause, No. 1031, a *petition* alleging that the order of May the fifth, eighteen hundred and ninety-four, directing Clagett to release the three thousand dollar mortgage had been improvidently passed and praying that it be rescinded and set aside.   On February the twenty-eighth, eighteen hundred and ninety-six, an amended *petition* was filed seeking the same relief, but setting forth more in detail the grounds upon which the application was founded.   It specifically charged that the order of May the fifth had been obtained without notice to the parties interested in the Contee trust funds, and that the petition upon which the order had been based was an *imposition* on the Court, and that no consideration had been paid or given for the release of the mortgage.   There is no specific averment that the order of May the fifth had been procured by fraud, though it is alleged that the action of the trustee, Clagett, and of Mrs. Quinn *resulted* in a fraud upon the appellants.   In due season an answer was filed by Mrs. Quinn and her husband, but a decree *pro confesso* was entered against Clagett.   A general replication to the answer was put in and testimony was taken.   Upon the hearing the petition was dismissed upon the sole ground " that the proceedings should have been by original bill for fraud and not by petition."   From the order dismissing the petition this appeal was taken.

The first question with which we have to deal is whether the Court below was right in holding that the relief sought—the annulment of the order of May the fifth, eighteen hundred and ninety-four—can only be granted or accorded under an original bill for fraud.

It must be remembered that the relief invoked is not founded on an averment that the order of May the fifth was procured by fraud.   The averment of fraud has relation, not to the *obtention* of the order, but to its *effect* after it had been obtained.   Neither is redress sought because of a mere error of law apparent on the face of the proceedings, nor because of new matter discovered

since the passage of the order. These observations are important in view of the fact that it is a thoroughly well settled doctrine of equity that in general a decree or decretal order, after enrolment, cannot be revised or annulled except by an original bill for fraud or by a bill of review. Being enrolled, a decree must ordinarily be allowed to stand for what it purports to be on its face, until reversed or revised in some more solemn manner than can be inaugurated by a mere petition. *Miller's Eq.*, sec. 287, *and the authorities there cited.* But this general rule is not without exceptions; and consequently there are *some* decrees and decretal orders that may be rescinded and annulled without the formality of a proceeding by original bill. Mr. Miller in his admirable work divides the exceptions into three groups, viz.: *First,* cases not heard upon the merits; *Second,* cases in which the circumstances are such as to satisfy the Court that the decree should be set aside; and *Third,* cases where the decree has been entered by surprise or mistake. *Miller's Eq.*, sec. 288. It is not deemed necessary to go into an examination of the numerous decisions that might be cited in support of these exceptions, but a few, by way of illustration, will be alluded to. Thus in *First Nat. Bank* v. *Eccleston,* 48 Md. 271, a bill was filed against husband and wife for the sale of real estate under a mortgage, and a decree *pro confesso* was passed after an order of publication. Subsequent to the enrolment of the decree the wife filed a petition praying that the enrolment be vacated and that she be allowed to answer the bill. It was held that "where a decree has been passed by default without a hearing on the merits, a Court of Equity has power in the exercise of a sound discretion to vacate the enrolment in order to let in a meritorious defence, and this may be done upon petition without a bill of review or an original bill for fraud." And so in *Straus* v. *Rost,* 67 Md. 465, after *four years* from the date of the order of ratification of an audit, an infant filed a *petition* in the case, praying that the audits be rescinded and that he might be allowed his share in the estate. The petition did not attack the original

decree, nor impeach the title of the purchaser, nor assail
the order of ratification on the ground of fraud. It was
held that the remedy by petition was proper. In *Thrus-
ton* v. *Devecmon*, 30 Md. 210, proceedings of an *ex parte*
character had been taken and after the decree had been
enrolled a petition was filed to vacate the enrolment on
the ground of surprise, and asking to be let in to answer
on the merits. There was no allegation of fraud. See
*Gechter* v. *Gechter*, 51 Md. 190. It may be remarked in
passing that in all instances falling within these excep-
tions the application is addressed to the sound legal
discretion of the Court, though that discretion upon
being exercised does not preclude an appeal from an
order erroneously passed. *First Nat. Bank* v. *Eccleston,
supra.*

The order of May the fifth was obviously, in so far as
the beneficiaries under the Contee trust were concerned,
purely *ex parte*. Not only was no notice given but no
possible opportunity to be heard was afforded. The
petition was not filed until *after* the order appended to
it had been signed. Not only was it *ex parte* but its
passage was a palpable surprise. Without notice or
hearing of any kind its effect, if efficacious at all, is to.
divest a right which never would or could have been
divested in such a way had the parties directly interested
been given a day in Court. That it is fatally erroneous
is manifest. It depletes a trust fund of an investment
without cause; and in fact releases Mrs. Quinn from the
obligation to restore to the Contee trust estate not
merely money which she owed to it, but money which
she had actually borrowed from that estate. There was
not the slightest justification for the passage of the
order, and it cannot be doubted that the Judge who
signed it never would have sanctioned it if he had been
apprised of the fact that Clagett was, at the time, insol-
vent and a defaulter and that the *cestuis que trustent* were
ignorant of the application made to him. There was,
confessedly, no hearing on the merits of the petition on
which the order was founded. The fact that it strips a
trust fund of an investment without consideration and to

the certain prejudice and injury of that fund, conclusively demonstrates that it ought never to have been signed. The absence of notice in its obtention, and the manifest injustice of its effect point with unerring certainty to the mistake that was committed by its passage. It would be difficult to suggest a case combining more distinctly all three of the exceptions to the general rule; or one more strongly demanding the expunging or rescission of an improvident order.

This case is widely distinguishable from *The United Lines Tel. Co.* v. *Stevens*, 67 Md. 156, relied on in the opinion of the Court below. In that case it was decided that when an enrolled decree is assailed for *fraud in its obtention* the only procedure to which resort can be had for its annulment is an original bill for fraud. In the case at bar fraud is not made the basis of the petition— it is merely stated as the consequential result of the act done. In assuming the contrary view the learned Judge below fell into the error which led to the dismissal of the amended petition. The petition was not very artificially drawn, and singularly enough, as a result, the petitioner's solicitors have treated it as an original bill for fraud, whilst the respondent's solicitors claim that it is a petition alleging fraud. Looking to the substance rather than to the mere informal averments, we agree with neither contention. If it be an original bill it was improperly filed in the old equity case No. 1031—it should have been the first step in an independent proceeding. But it is a petition and not an original bill. As, when rightly read, it does not seek to vacate the order of May the fifth on the ground of fraud practised in the obtention of that order, it was properly filed in the original case and regularly brings before us the propriety of the order which it assails. These observations dispose of the first of the two questions presented by the record.

But little, in addition, need be said with respect to the second. There was no warrant or authority of law for taking from the Contee trust fund fifteen hundred dollars confessedly belonging to it, to pay Mrs. Quinn

that much money due to her by Clagett out of the Elizabeth Bowling trust estate. Mrs. Quinn perfectly well knew that she owed fifteen hundred dollars to the Contee trust, and both she and Clagett were aware, or were bound to be aware, that she had no right to appropriate that money, thus due by her to others, to the payment in part of her share of a residuary legacy having no connection whatever with the Contee fund. The Circuit Court had no authority to empower the trustee, Clagett, to pay Mrs. Quinn her share of the Elizabeth Bowling trust funds with other funds belonging to a totally different trust estate. The diversion of these funds was a breach of trust committed by both Mrs. Quinn and Clagett, and the order of May the fifth, obtained as it was, whilst permitting it, does not and cannot legally sanction it. It makes no possible difference how much money was due by Clagett, trustee of the Elizabeth Bowling fund, to Mrs. Quinn; he had no power to pay that debt with other and wholly different trust funds, and she had no right knowingly to receive payment through and by the release of a mortgage which secured a debt due by her to the Contee trust fund. She knew, or was bound to know, that the mortgage securing the Contee estate could not be lawfully released until she, the debtor, repaid the amount borrowed by her, and repaid it to the Contee fund. Her complicity in the breach of trust, by means of which breach of trust the Contee fund was wrongfully depleted for her benefit, cannot be tolerated by a Court of Equity, but makes her, as well as the trustee, liable to restore to the Contee estate the amount improperly diverted from it. If she restores to that fund what she owes to it, she is not injured. She was a debtor to the Contee trust estate and she cannot be permitted to pay that debt by substituting for the mortgage which secured it, the personal liability of a defaulting and an insolvent trustee. It is wholly immaterial whether she knew or did not know that Clagett was insolvent. Her obligation was to *pay* the mortgage debt. That obligation has not been discharged, though she has sought to avoid discharging it by shifting the

liability from herself to Clagett who was her debtor, but
that scheme cannot avail.   As she has not discharged
the debt she owed to the Contee estate, she still owes it.
The release of the mortgage was ineffectual to exonerate
her.   It therefore follows that the order of May the fifth
must be rescinded, the release of the mortgage must be
cancelled and that Mrs. Quinn must pay the fifteen
hundred dollars with interest to the Contee trust fund.
The order appealed from dismissing the petition will
consequently be reversed and the cause will be remanded
that a new order conforming to this opinion may be
passed.

> *Order reversed with costs above and*
> *below, and cause remanded.*

(Decided June 28th, 1898.)