GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v. W. B. GARVEN.

Decided April 15, 1908.

**1.—Presumption—Railroad Accident—Master and Servant.**

As to a railroad passenger, the fact that an accident raises a presumption of negligence on the part of the carrier; but as to an employe no such presumption arises from the mere happening of the event. In the latter case negligence must be shown affirmatively. But there are cases in which the very nature of the accident raises a presumption of negligence.

**2.—Same—Case Stated.**

In a suit by an employe for damages for personal injuries caused by the explosion of a locomotive boiler, evidence considered, and held insufficient to show negligence on the part of the defendant, nor was the accident of such a character as to raise a presumption of negligence.

Appeal from the District Court of El Paso County. Tried below before Hon. J. M. Goggin.

*Baker, Botts, Parker & Garwood* and *Beall & Kemp,* for appellant.— We respectfully submit that the plaintiff has only shown by his evidence, that he was in the employ of the defendant as a locomotive fireman, and that there was an explosion by which he was thrown off on one side, and that he sustained personal injuries to a certain extent. This is not sufficient to entitle him to a recovery. The defendant is not an insurer against personal injuries to its employes. Galveston, H. & S. A. Ry. Co. v. Delahunty, 53 Texas, 211; Trinity County Lumber Co. v. Denham, 85 Texas, 59.

The fact of negligence on defendant's part, as alleged by the plaintiff, being essential to his recovery, the burden was upon him to establish it. Texas & P. Ry. Co. v. Overall, 82 Texas, 249.

There is no presumption of negligence from the mere happening of the accident and the plaintiff's injury: Choate v. S. A. & A. P. Ry. Co., 90 Texas, 86; Gulf, C. & S. F. Ry. Co. v. Schieder, 88 Texas, 161; Broadway v. San Antonio Gas Co., 24 Texas Civ. App., 603; Chicago & N. W. Ry. Co. v. O'Brien, 132 Fed., 593.

*J. H. McBroom* and *W. M. Peticolas,* for appellee.—The evidence was sufficient to raise the issue that defendant negligently allowed the water in the engine boiler to get too low, and thereby caused the explosion. Burton v. Texas & Pac. Ry., 149 Fed. Rep., 388; Jones v. Shaw, 16 Texas Civ. App., 290; McCray v. Galveston, H. & S. A. Ry. Co., 89 Texas, 168; Gulf, C. & S. F. Ry. v. Kizziah, 4 Texas Civ. App., 356.

The evidence was sufficient to raise the issue of whether defend-

ant's fusible plug, if any it had, was constructed of proper materials. El. Paso Foundry v. De Guereque, 101 S. W., 814; Missouri, K. & T. Ry. Co. v. Crowder, 55 S. W., 381; Gulf, C. & S. F. Ry. Co. v. Wood, 63 S. W., 165; McCray v. Galveston, H. & S. A. Ry. Co., 89 Texas, 168; Blanton v. Dold, 18 S. W., 1149; Rose v. Stephens & C. Trans. Co., 11 Fed. Rep., 438.

While the proof of the accident and the injury, standing alone, in an employee's case, might not show negligence on the part of the defendant, yet if proof of the facts leading up to and attendant on the accident, the injured person's relation to it, and mechanical rules based on known experience, lead to the conclusion that there was negligence, the issue is sufficiently raised to require its submission. McCray v. Galveston, H. & S. A. Ry. Co., 89 Texas, 168; Jones v. Shaw, 16 Texas Civ. App., 290; Broadway v. San Antonio Gas Co., 24 Texas Civ. App., 603; Patton v. Southern Ry., 82 Fed., 979 Missouri, K. & T. Ry. Co. v. Crowder, 55 S. W., 381; St. Louis S. W. Ry. Co. v. Shiflett, 56 S. W., 699; Washington v. Missouri, K. & T. Ry. Co., 90 Texas, 314.

FLY, ASSOCIATE JUSTICE.—This is a suit for damages, arising from personal injuries, instituted by appellee. One of the grounds of negligence was that the engine was not equipped with a "fusible plug," an appliance placed in the crown sheet of the boilers of locomotives "to the end that, should the water in the boiler, for any cause, get lower than the crown sheet, such fusible plug will melt, the water from the boiler will put out the fire, and the strain upon the boiler be relieved, and thereby any danger of an explosion averted; that an engine properly equipped with such fusible plug can not explode." Another ground was that the engine was equipped with an old, defective water-glass, so that the water level could not be ascertained, and that appellant "negligently allowed the water in said boiler to get too low, the crown sheet to burn, and the explosion to be thereby caused." Appellant pleaded not guilty, contributory negligence and assumed risk. The cause was tried by jury and resulted in a verdict and judgment in the sum of $2500.

It is ascertained from the evidence that appellee was a locomotive fireman, in the employ of appellant, and that he was making a trip east from El Paso on February 24, 1907, and that at a place called Torcer, about seventy miles from El Paso, what is known as the "gasket" of the water-glass, on the side of the engine occupied by the fireman, blew out and he could not then tell the amount of water in the boiler without consulting the gauge cocks. The gauge cocks were on the engineer's side and were used for testing the amount of water in the boiler. The engine exploded about three miles east of Chocar and about one hundred and twenty miles from El Paso. The water-glass was in good condition when the locomotive left El Paso, and its breakage had no connection with the explosion, but only prevented appellee from seeing the condition of the water on his side of the engine. Appellee testified that he did not know what caused the explosion. The engineer could at any time ascertain the amount of the water in the boiler and he did test it as did ap-

pellee. The locomotive took water forty-five miles from El Paso, and twice more before the explosion. Water was taken at Chocar only three miles from the place of the explosion. There was a slight leakage from the engine but appellee swore that it did not cause the explosion. Experts described a fusible plug as composed of lead and block tin, which is placed over the fire-box in the crown sheet, and which in case of low water would become so heated that it would melt and permit water to enter the fire and extinguish it, or give an alarm to the engineer and fireman. The experts expressed the opinion that explosions arise from two causes—low water and defective boilers. They further stated that fusible plugs were absolute safeguards against explosions from low water. It was shown that the engine, that exploded, had a fusible plug of the standard kind used in locomotives, and that it had melted and run down into the fire-box. It was shown that the boiler was first class and that the explosion did not arise from any defects in it.

If the evidence of appellee is to be given credit, the explosion could not have resulted from low water because the boiler had been filled with water a short time before the explosion, and the leakage was not shown to have been sufficient to have caused the water to get low in so short a time. Appellee stated that the leakage could not have caused the explosion. It is true that Smith, a brother-in-law of appellee, and Peters gave it as their opinion that the explosion was caused by low water, and Smith said that the fusible plug was not a proper one because it was seven-eighths of an inch above the crown sheet, when it should have been on a level with it. Smith showed that he knew nothing of what kind of fusible plugs were being used in the best locomotives, and it was shown by overwhelming testimony that the engine was equipped with a standard fusible plug and that it had melted and run down to the fire-box.

The court did not submit to the jury any issue as to the fusible plug except as to its not being "a soft plug of reasonably suitable material." There was no testimony that tended to show that the plug in the locomotive was not "a soft plug of reasonably suitable material." It was in proof that it was made of the materials of which standard ones are always made. The court assumed, as the evidence justified, that there was a fusible plug and that if there was any negligence in connection with the plug, it was on account of its not being constructed of the proper material, and which would not melt at as low a temperature as it should have done. There was no evidence to sustain that issue.

The other ground of negligence submitted was that of the engineer in permitting the water to get so low that it caused an explosion, and the great preponderance of the evidence is against that theory.

In the case of a passenger the fact of an accident carries with it a presumption of negligence on the part of the carrier, but in the case of an employe no such presumption arises from the mere happening of the event. In the latter case negligence must be shown as an affirmative fact. Contractual relations must exist between the parties, as in the case of passengers and others, to raise the

presumption of negligence in case of an accident. Broadway v. San Antonio Gas Co., 24 Texas Civ. App., 603; Stearns v. Ontario Spinning Co., (Pa.), 29 L. R. A., 842; Patton v. Texas & Pac. Ry. Co., 179 U. S., 658.

There is really no exception to the rule that negligence is not inferable, as between master and servant, from the mere occurrence of an accident, but there are cases where the very nature of the action may of itself, and through the presumption it carries, supply the requisite proof; that is, the circumstances in proof show that the accident would not have happened if due care had been exercised. McCray v. Galveston, H. & S. A. Ry., 89 Texas, 168; Winkelmann v. Colladay, (Md.), 40 Atl., 1079; Houston v. Brush, (Vt.), 29 Atl., 380; Grant v. Raleigh & G. Ry. Co., (N. C.), 13 S. E., 209; Soderman v. Kemp, 145 N. Y., 427.

In this case appellee has proved no act of negligence bearing upon the accident, and this verdict can not be sustained, unless it is inferable from the circumstances under which the explosion took place. Water had been taken into the boiler but a few minutes before the explosion, and when the locomotive had gone only three miles, and it was shown that the engine had gone on that very day from forty to forty-five miles with the water carried by it and it appears improbable that the explosion occurred by reason of a lack of water. The water gauges on the engine were tested from time to time by the engineer and there are no circumstances indicating a want of care on his part. There was a slight leakage and a water-glass was broken but appellee stated that neither of those matters had any connection with the accident. The engine in other respects was constructed on approved lines. Is negligence inferable from the mere fact of the explosion?

In the case of Texas & Pac. Ry. v. Barrett, 166 U. S., 617, the Supreme Court of the United States commended a charge that stated "that the mere fact that an injury is received by a servant in consequence of an explosion will not entitle him to a recovery, but he must, besides the fact of the explosion, show that it resulted from the failure of the master to exercise ordinary care either in selecting such engine or in keeping it in reasonably safe repair." To which may be added, in this State, in case of railroad trains, or that the accident occurred through the negligence of the engineer or other employe than the injured servant. The judgment in that case was affirmed, it appearing that the locomotive was old and defective.

The evidence of experts showed that it was often impossible to tell what causes an explosion, and that the fusible plugs sometimes blew out when the boiler was full of water. That, however, occurred when the proper metals for the plugs were not used. Appellee admitted that the engineer used the gauges in testing the state of the water, and that he tested it.

The verdict is contrary to the great preponderance of the evidence, shown by the record, but we are not satisfied that the evidence was fully developed, therefore, judgment will not be rendered here, but the judgment will be reversed and the cause remanded.

ON REHEARING.

Appellee has, in his motion, given much valuable information as to how a locomotive is constructed, and explains that "taking water" does not mean taking it into the boiler of the engine but into the tank of the tender, and that the tank might be full of water and the boiler empty. All of which information might have assisted this court, perhaps, if it had come in the shape of ·evidence instead of being embodied in a motion for rehearing with no facts to form a basis for it. The fact remains, not only that water was taken just before the explosion, but that after the water was taken the last time the engineer tested the water and that the gauge cocks were all right with which he tested it. We feel confident in saying that the test was made of water in the boiler, and not that in the tank, and it must be presumed that the engineer tested the water properly. That test took place a few minutes before the explosion.

It appears from the evidence that "injectors are used to put water from tank to boiler," and we gather from the evidence that the engineer just before the explosion told appellee to put on the injector which could have been for no purpose except to fill the boiler. We will presume that he obeyed the engineer. It was his duty to supply the boiler with water. It was testified that it was only under extraordinary conditions, whatever those may be, that an injector was used by the engineer.

The statement is made that the fireman "might sporadically test the gauge cocks and the engineer might test them, but still in a few moments longer the engineer failing to do so again, the danger line might be reached and the accident occur." That is merely theorizing without proof to sustain it.

The engine was properly equipped with a fusible plug, which under the evidence would have melted before the explosion, if the water had been too low, and would have put out the fire, or at least have given warning of the condition of the water. The fuse was melted, but whether by reason of low water or by reason of the explosion is not known. We adhere to our opinion that the evidence fails to show that the explosion was caused by the water in the boiler being permitted to get too low. Appellee may have a case if the facts are fully developed, but he has failed to make one under the facts contained in the record. The motion is overruled.

*Affirmed.*