JAMES PATTERSON v. ALEX A. MELCHIOR and Another.[1]

January 8, 1909.

Nos. 15,886—(170).

**Negligence—Questions for Jury.**

Plaintiff, nineteen years of age, engaged in pulling sideways the cable of a ditching machine by means of four horses, was struck by a chain. when a hook straightened out on an unsuccessful attempt to move the cable to which it was attached. The chain he used was five feet in length. The master had provided also a much larger chain twenty feet in length. The evidence tended to show that the shorter chain had been previously straightened out on a pull by sixteen horses. The relative power of the horses, their footing, and the like were not shown. The hook was then repaired. Afterward it again had been brought back, and before plaintiff went to work it became out of repair. At the time of its use by plaintiff it was "bent a little * * * straightened out some." The lines plaintiff used were twenty feet long. The questions of the master's negligence and the servant's contributory negligence are *held* to have been for the jury.

**Amendment of Answer—Action by Guardian.**

The action was brought by plaintiff's guardian. The court refused to allow defendants to amend their answer so as to set forth that the guardian had not been appointed until after the action had been commenced. No application for a continuance was made. It is *held* that no abuse of the discretion of the trial court appeared.

**Verdict not Excessive.**

A verdict of $2,500 is *held* not to have been excessive, in view of the testimony, in a case in which one leg was admittedly broken and there was evidence tending to show that the other was also broken.

Action in the district court for McLeod county by William Patterson, by the guardian of his person and estate, to recover $5,543 for personal injuries sustained by plaintiff while in the employ of the defendants. The case was tried before Morrison, J., and a jury which returned a verdict in favor of plaintiff for $2,500. From an order denying defendants' motion for judgment notwithstanding the verdict or for a new trial, they appealed. Affirmed.

[1] Reported in 119 N. W. 402.

*M. H. Boutelle* and *R. T. Boardman,* for appellants.
*Sam G. Anderson, Jr.,* for respondent.

JAGGARD, J.

Plaintiff and respondent, a young man of nineteen years, was engaged by defendants and appellants as a teamster in pulling sideways the plow of a ditching machine, attached to and moved forward by means of a cable running from two capstans, through a pulley in front of the plow. He was driving the team so as to pull at right angles to the cable. Thereby the plow would be turned in the desired direction. There were two chains at the capstan for general use around the machine—one five feet long, which plaintiff used; the other, much larger, twenty feet in length. Plaintiff himself hooked the smaller one to the cable each of the five or six times the team pulled. After pulling each time, he unhooked it, and when called upon he hooked on and pulled again. As he started his horses up to pull the cable the last time, they "sagged" back. He started them again. The cable flew back and struck him, causing the injuries complained of.

With respect to defendant's negligence, the argument is that the precise cause of the accident was largely conjectural, and that the only evidence of the hook's lack of reasonable safety for the purpose for which it was used shows that it became in that condition during the progress of the work. There was, however, direct testimony that, the last time plaintiff hooked it to the cable, it straightened out, and snapped off where it straightened out, and broke plaintiff's legs. This was sufficiently definite evidence of the immediate cause. There was also evidence that the hook had been previously repaired when "it was straightened out as straight as it was after this accident." This occurred at a time when sixteen horses tried to pull the machine out of a mudhole. After the hook was brought back from having been repaired, and before plaintiff went to work, it became out of repair again. It was partially straightened out. At the time of its use by plaintiff the hook itself was in an imperfect condition. It was "bent a little, not very much. * * * It was straightened out some." Defendant offered no evidence to contradict this testimony, and did not produce the hook itself, nor show the conditions when the hook had

previously straightened out, as what was the relative power of the horses or their comparative footing, and the like.

Stress is laid, however, on the fact that the hook did not straighten out until the last of several attempts to pull the cable aside. That was a consideration entitled to weight when the jury was considering the holding power of the hook. Whether the master had exercised due care in providing a reasonably serviceable hook was the question before it. That care necessarily had reference to the knowledge of the master of its former inadequacy. It does not at all follow, from this compulsory reference to previous experiences, that the master would in effect be held liable unless he had some servant present to observe the sufficiency of the instrumentality in use, and to change it on observation of impaired usefulness. Such a proposition is as obviously unsound as it is irrelevant in this case. The master was bound to exercise due care in furnishing a reasonably safe instrumentality. It was for the jury to determine whether the previous history of the hook in use and its condition at the time the master undertook to use it were inconsistent with the exercise of such care on his part. The master's negligence was not presumed from the mere fact of injury or accident, but was, we think, inferable from the facts and circumstances disclosed.

Plaintiff's contributory negligence was also for the jury. While two chains were furnished by the master for such work as plaintiff was doing, there was evidence that the short chain was always used in pulling the cable sidewise. It appears conclusively that the master had previously used the one which plaintiff selected in connection with this work of the master, and had applied to it the power of sixteen horses, which must have been considerable, although not, as a matter of law, involving more strain than was put upon the hook at the time of the accident. Plaintiff was charged with no duty of inspection. He was not bound to have anticipated negligence on his master's part. He had a right to assume that the master had exercised ordinary care in providing a reasonably sufficient chain and hook. It was a question of fact for the jury whether the hook was straightened out when plaintiff first used it, and whether he knew and appreciated, or should have known and appreciated, the danger and risk of using it. If plain-

tiff had walked at the end of the lines, which were twenty feet long, he would have been beyond danger from the springing back of the cable; but whether he could have worked efficiently at that distance, and whether he was negligent in driving as he did, were clearly questions of fact for the jury.

These conclusions are in a measure sustained by the authorities.

In McGuire v. Waterloo, 137 Iowa, 447, 113 N. W. 850, plaintiff was injured by the fall of a beam caused by the breaking of a chain. The evidence tended to show that the chain which broke was somewhat worn, and that it was not of sufficient strength from these defects, and also on account of its size, to be used safely to support so great a weight, and that it had been selected by the workmen from other chains, some of which were larger and amply sufficient for the purpose. It was held that "it was [the master's] duty to take reasonable precautions * * * to see that the support of this timber * * * was adequate." He took no such precautions. The sufficiency of the chain was a matter as to which the employer was bound to exercise competent care and supervision, but as to which the plaintiff was charged with no duty and possessed no knowledge.

In Jones v. Herrick (Iowa) 118 N. W. 444, a grading machine chain broke and caused the employee's death. There was evidence that it had broken a short time previously, and that the link broken was half worn through at a place readily observable by the master, who managed the plow. It was held that defendant's negligence and plaintiff's contributory negligence were for the jury.

In Spicer v. South Boston, 138 Mass. 426, 427, a weight was suspended by an iron S hook. The hook broke, and the weight fell upon and injured the plaintiff. There was a visible flaw in the hook above the flaw at the place of rupture. "If a man made a careful examination of the hook, after making it, he might possibly, or if a man familiar with hooks examined it, he might perhaps, have discovered the flaw which caused the accident, but these flaws would not be visible on an ordinary inspection." If plaintiff had, as he could have, stood a little out from under the weights, he would have been safe; but he could not have then done the work so efficiently. It was held that the negligence of the master and contributory negli-

gence of the servant were both for the jury. And see Sandahl v. Lammers, 85 Minn. 162, 88 N. W. 532; Soderman v. Kemp, 145 N. Y. 427, 40 N. E. 212.

2. The action was brought for plaintiff by his guardian. The defendants sought to amend their answer before trial, so as to deny that the guardian had been appointed until after the action had been commenced. This matter was within the discretion of the trial court. A guardian ad litem nunc pro tunc could have been appointed at the time. If thereby defendant was in any sense prejudiced, he could have applied for a continuance of the case on terms. This he did not do. Under the circumstances, the refusal to allow the amendment is not proper ground for reversal. 22 Cyc. 646; Hepp v. Huefner, 61 Wis. 148, 20 N. W. 923; Sabine v. Fisher, 37 Wis. 376; Webster v. Page, 54 Iowa, 461, 6 N. W. 716; Rima v. Rossie, 120 N. Y. 433, 24 N. E. 940; Foley v. California, 115 Cal. 184, 47 Pac. 42, 56 Am. St. 87. Cf. Patterson v. Melchior, 102 Minn. 363, 113 N. W. 902.

3. The jury returned a verdict for $2,500. It is insisted that this was excessive. It is admitted that one leg was broken. Appellant insists that there was no evidence that more than one leg was broken. That, on the record, was, we think, a question of fact. The plaintiff swore that "my legs were broken." "Q. When you came to there, were your legs in casts or not? A. Yes, sir, they were in casts." Another witness testified that, when the plaintiff was undressed, "we discovered his legs were broken, this one especially; it was loose." On the other there was "nothing only a little mark over the skin; but it began to swell right off." There was some, but not strong, testimony on the part of physicians tending to support this. The physician who had attended plaintiff was not called as a witness. Under these circumstances, and in view of the fact that the trial court refused to interfere, we are of the opinion that the verdict was not excessive.

Affirmed.

ELLIOTT, J., dissents.