12L  63
13L  429
14L  658
15L  416

EAST TENNESSEE, VIRGINIA AND GEORGIA RAILROAD COMPANY *v.* JOHN DUFFIELD.

MASTER AND SERVANT. *Defective tools. Servant may rely on superior judgment of master. When.* Although the general rule is that a servant who uses a defective tool with knowledge of the defect cannot recover against the master for an injury occasioned by the defect, yet it will be an exception to the rule if the servant acts under the direct order of the master or his agent, under the exigency of the business, in a matter as to which the servant has the right to rely upon the superior judgment of the master or his agent, and the danger is not so glaring that a man of ordinary prudence would refuse to take the risk.

FROM M'MINN.

Appeal from the Circuit Court of McMinn county. D. W. TREWHITT, J.

W. M. BAXTER and JOHN ALLISON for Railroad Company.

S. J. KIRKPATRICK and WEBB & McCLUNG for Duffield.

COOPER, J., delivered the opinion of the court.

Duffield was a section hand in the employment of the railroad company, and was at work in spiking down rails on the road, under a section boss, when the injury was sustained for which he brought this suit. The rails had been taken up, and were being relaid as fast as possible for the next train. The plaintiff below was using a hammer with which he had been working for six months. The hammer was furnished by the company, and was an old hammer, the plaintiff says, when he got it, and with a handle that he himself had put in it, which was cracked. The face of the hammer at one end was bursted partially off, and the face of the other end was rounded like an egg. The plaintiff says the hammer was broken on the day before the accident in cleaving rails, but there is other testimony tending to show that the hammer had been in the same condition for a week or longer. The section boss directed the plaintiff to take the hammer and drive the spikes in the rails. The plaintiff objected that the hammer was dangerous to work with, but the section boss told him, with an oath, to take it and go on with the work, otherwise he would lose his place. The plaintiff did accordingly proceed to drive spikes with the hammer, when one of the spikes "flew" under a blow of the hammer, and struck him on the shin, breaking the bone, and creating a severe and ulcerous wound. According to the testimony the work of driving spikes is a dangerous one, the spikes frequently flying when struck by the most skilful men

Railroad v. Duffield.

with the best hammer. The plaintiff testifies that he knew the condition of the hammer and the handle. He says: "Of course I was obliged to see that the hammer was broken; any man who wasn't blind could have seen the condition of the hammer. I knew when I saw it that it wouldn't do to drive spikes with, and that is why I spoke to the section boss about it." He had been a railroad hand for thirteen years.

The verdict and judgment were in favor of the plaintiff below, and the railroad company appealed in error. The grounds relied on for reversal are alleged errors in the charge - of the court, or in the refusal to charge as requested. The Referees have reported in favor of reversal because of an error in the charge.

The court, among other things, charged: "If the evidence shall show you that the defendant furnished to plaintiff a defective or unsuitable hammer, and that the defects in the hammer were such that plaintiff could have seen them and known them, and judged of the unsuitableness of the same as well as his superior; and if he, plaintiff, accepted service using the same, or continued in service using the same, with full knowledge of such defects, he would be regarded as voluntarily taking the risk, and he could not recover for any injury resulting from such defective implement. But if the evidence shall show that the plaintiff had already entered upon his employment under the defendant's servant, and if, while so engaged, he discovered the defective condition of an implement with which he was ordered or required by his supe-

rior to work; and if the evidence shall further show you that he complained to his superior of such defective implement; and if the evidence shall also show you that he was ordered by his immediate superior to use the same on pain of being discharged; then, if the proof shall show that he did so use such defective implement, and while using the same was injured while in the exercise of ordinary care, then the defendant would be liable, and for such damages as all the facts and circumstances may warrant."

The Referees suggest that the charge is self-contradictory, the latter end having forgotten the beginning. For while the first paragraph says broadly that the plaintiff cannot recover if he used the hammer with knowledge of its defects, the last paragraph says he may recover notwithstanding such knowledge. The charge is loosely worded, but his Honor no doubt intended to say that while, as a general proposition, a servant cannot recover for an injury occasioned by the use of a defective tool while he continues to use it with knowledge of its defects, yet he may recover in the particular case where he was ordered by his immediate superior to use the implement on pain of being discharged notwithstanding his knowledge of its defects. And the question is whether the proposition enunciated is correct as matter of law in view of the facts of this case.

The master is not an insurer of the safety of his servants in respect to the machinery or implements used, nor is he under an obligation, under all circumstances, to make use of the safest known instruments,

Railroad *v.* Duffield.

nor is he responsible for a failure to discard an implement which is not such, and supply its place with something safer. His general duty is to supply proper tools. But if the servant knows before he enters service, or discovers afterwards that an instrument is unsafe or unfit in any particular, and, notwithstanding such knowledge, voluntarily enters into, or continues the employment without objection or complaint, he is deemed to assume the risk of the danger thus known, and to waive any claim for damages against the master in case it shall result in injury to him: *East Tennessee, Virginia & Georgia Railroad Co.* v. *Hodges.* 2 Leg. Rep., 6. The fact that a servant has complained of a defect will not entitle him to recover unless a promise to repair has been made. And if he continues to serve after the expiration of a reasonable time from the date of a promise to repair, he will be deemed to have accepted the risk of the dangers, and the master will not be liable. On the other hand, there is a class of cases which hold that, although the servant may be aware of the defect, yet if it was of such a nature that a man of ordinary prudence would not, on account of it, have abandoned the service, and the servant continues therein, and was in consequence of the defect injured, he may recover damages: 2 Thomp. Neg., 1010. The rule, if sustainable, must be defended upon general views of policy, based upon the consideration of the unequal situation of master and servant: *Louisville & Nashville Railroad Co.* v. *Bowler*, 9 Heis., 866. So if the servant incur the risk by the express direction or com-

mand of the master or his agent, and the danger was not inevitable or the necessary result of performing the service, it is a question for the jury to say whether the performance of the service was negligence in fact: Wood on Master and Servant, sec. 378. The duty of the servant being obedience, if the master orders him to perform a dangerous service, and he obeys, and is thereby injured, the law will not deny him a remedy on the ground of contributory negligence, unless the danger was so glaring that no prudent man would have entered into it, even where, like the servant, he was not entirely free to choose: 2 Thomp. Neg., 974.

The reason of the rule that the servant cannot recover damages if he continues to work with defective tools with full knowledge of the defects, is that being a free agent the law presumes that he will refuse to work with dangerous implements unless his compensation is proportioned to the risk. Every employment has its hazards which the employee necessarily assumes in accepting the service, or continuing in it with knowledge of any particular risk. It is negligence therefore on his part not to avoid or bargain for a known danger. The modification of the general rule suggested above, as made by some of the cases that the servant may recover for an injury occasioned by a defective tool of the defect of which he was aware, is difficult to maintain on principle. For it virtually changes the rule as to the free agency of the servant, and requires, as has been said, that the master should be more careful of the servant than the servant is of himself. It has not been recognized in this State.

Railroad *v.* Duffield.

The other modification that the servant may recover
for an injury occasioned by a risk incurred by the
direct command of the master or his agent, seems to
be better founded both in reason and upon authority,
in view of the duty of the servant to obey and the
emergencies of business.    But even in such cases the
limitations are that the hazard must not be too glar-
ing, and that the order must be in a matter· as to
which the servant has the right to rely upon the
superior judgment of the master.    The exigency of the
occasion may also be an important factor in a partic-
ular case.    These elements did exist in *Railroad Co.*
v. *Bowler*, 9 Heis., 866, where, as I am informed by
my brother judges, a section boss ordered a section
hand, upon a sudden emergency, to stand on the front
edge of a flat car and attempt to connect it with· an-
other car which had become uncoupled, and was mov-
ing off more rapidly, and fell between the cars and
was run over.

The mere fact, therefore, that the servant has re·
mained in the service of the master with knowledge
of a defect in the instrument used will not, of itself,
as matter of law, exonerate the master from liability.
It is evidence, and ordinarily conclusive evidence of
contributory negligence on the part of the servant
which will bar recovery.    But the question of negli-
gence, under the circumstances. of a case, is · for the
jury.    And the extent of the danger of the act, the
fact that it is done under the direct order of the
master or his agent, and the exigency of the occasion
are essential elements in determining the question.

The proof in the case before us shows that there was an existing exigency for prompt action to finish the track in time for an expected train. The task was accomplished, the witnesses say, "by a hard push." There was occasion, therefore, for a peremptory order. The proof shows that the order was given by the section boss to the plaintiff below, as a section hand, to go to work at once with a defective instrument, and the testimony is not positive that the hazard was so glaring that a prudent man would not have risked it for the short period of the job. The trial judge, consequently, was not only warranted but required to say to the jury that notwithstanding the general rule on the subject, it was for them to say whether the continuing to work, with knowledge of the defective character of the hammer, was, under the circumstances, such contributory negligence on the part of the servant as would deprive him of the right of recovery. And this is what he does in effect charge. He says to them that if you find that while engaged in his employment the plaintiff discovered the defective condition of the hammer, and complained thereof, but continued to work under the order of his immediate superior, and while doing so he was injured, you should find for the plaintiff. The exigency of the work and the extent of the hazard are not mentioned specifically, but these facts were before the jury by proof, and the charge may fairly be considered as made in view of them. A fuller charge which included these elements, as they might have been, would have been more favorable to the plaintiff. And the actual charge, when the

Railroad *v.* Duffield.

law is applied to the particular facts, is correct as far
as it goes.

His Honor, the trial judge, clearly erred in charg-
ing that: "The burden of proof is on the defendant
to show that it provided plaintiff with tools and im-
plements suitable, sufficient and safe as care and skill
can make them:" and in refusing to charge, as re-
quested by plaintiff, that: "The law presumed that
the master had performed the duty the law imposes
to furnish safe and suitable machinery; and the bur-
den of proof is on the plaintiff to show that this
duty has not been performed." But both the charge
and the request were useless abstractions. The proof
was clear, and furnished by the plaintiff, that the tool
in question was not suitable, sufficient and safe, and
the matter of the burden of proof was utterly imma-
terial. The real and only point of difficulty was that
of the contributory negligence of the plaintiff in using
the defective hammer with full knowledge of the de-
fect. This is one of the most glaring instances of a
prevailing fault in the charges of the circuit judges,
the dealing in general and abstract propositions of law
instead of coming down to the facts of the particular
case.

The other requests of the defendant are open to
the same objection. They are either abstract propo-
sitions or propositions which were only half truths, and
useless in view of the only real issue. Thus the
court was asked to charge as follows: "The servant
is not required to inspect the appliances and tools to
see if there is any latent defect, but he is bound to

see such defects as one plain to the senses. Therefore, if Duffield, from any source, had the same information that defendant had touching the condition of the hammer complained of by him, he is bound to act upon it, and if he voluntarily remains after such knowledge, he is taken in law to have assumed the risk incident to the use of such instrument. The duty of the master in the first instance is to furnish safe machinery and tools, but if Duffield knew that the hammer was defective and unsafe to be used, and yet he used it, even if ordered to do so, he assumed all the risks incident to its use if he consented to use it without any assurance from the defendant that the object complained of should be repaired.'

Now how could it be of the least importance to lay down the law in relation to the duty of a servant as to latent and patent defects, when the defect under consideration was patent, and fully known to the plaintiff, as he himself testifies? And what was the use of redrafting in a different form the general proposition already laid down in the charge that the use of a defective tool with knowledge of the defect would prevent a recovery, when the sole point was whether the circumstances took the case out of the rule, and the court had expressly charged that they did if found. It seems like a useless consumption of time and paper.

Another request was: "The question is whether Duffield was guilty of negligence in performing the service after a knowledge of the defect. The fact that he has complained of the defect, if no promise

to repair was made, does not operate to relieve him
of the charge of negligence, but may have directly
the opposite effect.     It is wholly a question of care
or negligence, and if Duffield knew or ought to have
known the danger, and a person of ordinary prudence
would have regarded it as dangerous to try to use
the hammer complained of, he cannot recover, even
though he may have complained of its condition
to the section boss." These are correct propositions
as far as they go, but clearly of no use after a charge,
as the general rule that use with knowledge would
prevent recovery, and a modification of the rule which
combined the facts embodied in the latter part of the
paragraph with other facts, which, in the opinion of
the court, would give the right to recover.

Another request was: "Duffield, in order to re-
cover, must take the burden upon himself of estab-
lishing negligence on the part of the railroad company,
and also due care on his own part.     He must intro-
duce proof overcoming two legal presumptions, that is
two presumptions of law: first, the presumption that
the railroad company has discharged its duty by fur-
nishing suitable and safe tools; and second, he must
introduce proof to overcome the presumption of law
that at the time he entered the service he assumed
all the ordinary risks of the business.    These are ab-
solute burdens imposed on Duffield, and he is not re-
lieved from the force of these presumptions by show-
ing that any injury resulted to him in consequence of
a defective tool employed in the business, but he must
go further, and show that the defect producing the

injury was not known to him, but was known, or
should have been. known to the railroad company.
Failing to overcome these presumptions he cannot re·
cover." Here are a series of presumptions to be over-
·come by showing' that the defect of the hammer was
not known to the plaintiff when the. plaintiff's own
testimony conceded that the defect was known to him.
'The request, therefore, reduced to its simplest elements,
was this, that if the jury shall find that the plaintiff
knew of the defect, and he admits that he knew of
it, then he cannot recover.    But the court had already
told the jury that the plaintiff's knowledge of the
·defect was not conclusive upon his rights if they should
find certain other facts.    The request is not good law,
and would have been utterly useless if correct as far
as it goes.

The paragraphs of the charge, which are excepted
to, in relation to the incompetency or misconduct of
the section boss, and the duty of. the company in
selecting and employing careful servants, were mere
abstractions, and if, as contended, there are no facts
in the record upon which to rest them, they could
not possibly do any harm.    Very few verdicts would
stand if the vague generalities which trial judges feel
it their duty to indulge in so as to cover every pos-
sible view which may have been presented in the argū-
ment of counsel, were treated as fatal because there
were no facts in evidence to sustain them.    The real
issue in this case was whether its peculiar facts took
it out of the general rule that a servant cannot re-
·cover for an injury occasioned by a defect of which

he was fully advised, and that issue was presented to the jury upon a charge less favorable to the plaintiff than he was entitled to.

The report of the Referees must be set aside, and the judgment affirmed.