EAST TENNESSEE & WESTERN NORTH CAROLINA RAILROAD
        CO. *v.* WALTER C. LINDAMOOD.

*Knoxville.*    September Term, 1903.

1.  NEGLIGENCE.  Must be proved as alleged.
    It is well settled that the evidence of the plaintiff in an action
    for personal injuries must conform to the specific acts of neg-
    ligence alleged in the declaration.  (*Post, pp.* 462, 464.)

    Cases cited and approved:   Coal Co. v. Daniel, 100 Tenn., 72; Sack
       v. Dolese, 137 Ill., 129; Soderman v. Kemp, 145 N. Y., 427.

2.  SAME.  Not presumed against employer from injury to em-
    ployee, when.
    As between employer and employee, there is no presumption of
       negligence on the part of the employer in furnishing appli-
       ances to the employee, arising from the injury itself.  It is
       presumed that the employer did his duty, and the burden rests
       on the employee as plaintiff to show negligence on the part of
       the employer.  (*Post, pp.* 462-467, 472-474.)

    Cases cited and approved:   Polk v. Kirtland, 9 Heis., 292; Rail-
       road v. Gurley, 12 Lea, 46; Railroad v. Duffield, 12 Lea, 63;
       Railroad v. Stewart, 13 Lea, 432; Nitroglycerin Case, 15 Wall.,
       524; Sack v. Dolese, 137 Ill., 129; Morrison v. Phillips, 44 Wis.,
       405; Ballou v. Railroad, 54 Wis., 257; Ladd v. Railroad, 119
       Mass., 412; Duffy v. Upton, 113 Mass., 544; Le Barron v. Ferry
       Co., 11 Allen, 312; De Graffe v. Railroad, 76 N. Y., 125; Soder-
       man v. Kemp, 145 N. Y., 427; Hughes v. Railroad, 91 Ky., 526;
       Dingley v. Star Knitting Co., 134 N. Y., 252; Railroad v. Binion,
       98 Ala., 570.

3. **SAME. Same. Conjectural evidence is incompetent to overcome these presumptions.**

Mere conjectural evidence, a mere inference drawn itself from a presumption, will not be sufficient to meet and overcome these presumptions stated in the second headnote, for inferences can never be drawn from mere presumptions, though they may be drawn from well established facts, and such evidence, though by an expert witness, is incompetent. (*Post*, *pp.* 464, 472-474.)

Cases cited and approved: United States v. Ross, 92 U. S., 281; Cosgrove v. Pitman, 103 Cal., 268-278; Douglass v. Mitchell, 35 Pa., 443; Bank v. Stewart, 114 U. S., 231.

4. **SAME. Same. Refusal to charge special requests is reversible error, when; Case in judgment.**

A brakeman suing for personal injuries resulting from a fall alleged that his fall was caused by the negligence of his employer in having in use upon the car a brake which was out of repair and dangerous, in that the brake chain was too long, and the deadwood in the car projected against, or so close to the brake rod and eyebolt of the brake rod as to prevent it from turning freely. His evidence showed that when he attempted to use the brake, it gave "a sudden jerk or lurch," which loosened his hold on the wheel and caused him to fall, but there was no evidence as to the nature of the defect causing the jerk or lurch. The defendant railroad company requested instructions that, if the jury were not able to determine which of the two defects alleged caused the injury, plaintiff could not recover; that it was presumed that the master had discharged his duty by providing suitable appliances and keeping them in proper condition, and that the burden was on the plaintiff to show the contrary; and that it was presumed that, if the car was in good repair at a date prior to the accident, it continued in like good condition until the accident occurred, and that the burden was on the plaintiff to show the

Railroad v. Lindamood.

contrary. *Held*, that the refusal to give these requests in charge to the jury was reversible error, though the circuit judge gave some general rules, correct in themselves, but embodied in a charge which embraced much other matter. (*Post, pp*. 460, 474-475.)

FROM WASHINGTON.

Appeal from the Circuit Court of Washington County. —C. J. ST. JOHN, Special Judge.

TIPTON & MILLER and KIRKPATRICK, WILLIAMS & BOWMAN, for Railroad.

ROBERT BURROW and ISAAC HARR, for Lindamood.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

This is the second time this case has been before this court. At the September term, 1902, it was reversed because of the admission of incompetent testimony. The opinion of the court on that reversal will be found in 109 Tenn., 407, 74 S. W., 112. Upon its remand, another trial was had, resulting in a verdict and judgment for $5,000 against the railroad company; and it has appealed, and assigned errors upon the action of the trial judge.

The defendant in error was a brakeman in service of

plaintiff in error, and while discharging his duty as such he received the injury, to recover damage for which this suit was brought. The declaration contains two counts. In the first of these it is alleged that while engaged in this service he was thrown from the top of a freight or box car in motion, and thereby received the injury complained of, and that his fall was caused by the negligence of his employer in having in use upon this car a brake which was out of repair and dangerous, in that the brake chain was too long, and, by reason of this defect, when attempting to apply the brake he fell from the car, and was run over by it.

The second count averred that the fall and injury as alleged in the first count were attributable to the negligence of the master in using a freight car with a brake which was defective, in that the deadwood in the car projected against or so close to the brake rod and the eyebolt of the brake rod as to prevent it from turning freely, and, in consequence of this, when attempting to apply the brake, defendant in error fell and was injured.

It will thus be seen that the plaintiff below presented by his declaration two theories upon which he sought to recover: First, that the brake chain was too long; and, second, that the eyebolt of the brake rod rubbed against the deadwood, and that one or both of these conditions occasioned his injury, and that the negligence of the master in permitting the existence of one or both of these defective conditions was actionable, so far as he was concerned. The record shows that the plaintiff in

error was operating a narrow-gauge railroad upon a line some thirty-two miles long, running from Johnson City, in this State, to its terminus, near the boundary of North Carolina, and owned and was using on this line ten or twelve freight or box cars.    It also shows that the defendant in error had been for several years engaged in the shops of the company, repairing and building such cars.    About six months, however, before the occurrence of the accident, he was employed by this company as brakeman; and, as has been already stated, it was while acting in this capacity he received his injury.

His account of the accident is that, under the direction of his superior, he mounted a freight car, which had been kicked on a side track, for the purpose of stopping it; and, to do this, he took hold of the wheel at the top of the brake staff, and was pulling it around with all his force, when the brake gave "a sudden jerk or lurch," loosening his hold on the wheel, so that, losing his balance, he fell from the car, which was still in motion, and was run over by it.    He does not undertake to say what was the cause of this jerk or lurch, as he did not examine the car or brake staff either before, at the time of, or after the accident, nor did any one else make such examination.    So far as his testimony or that of the other witnesses introduced by him, was concerned, the court and jury were left in the dark as to what occasioned it. No witness undertook to state affirmatively that the accident resulted from either of the conditions charged as negligence in the declaration, or, in fact, from any other

defect in the brake or its connections. The record is silent upon this very essential question, unless information is to be found in certain testimony, the competency of which will herafter be considered.

Before coming to the examination of the assignment of error that calls in question the admission of this testimony, there are certain well-established principles controlling such a case as the present, which it is proper to state:

In the first place, it is well settled that the evidence of the plaintiff must conform to the specific acts of negligence alleged in the declaration. *E. T. Coal Co.* v. *Daniel,* 100 Tenn., 72, 42 S. W., 1062. In the second place, as between the employer and employee, there is no presumption of negligence on the part of the former in furnishing appliances to the latter, arising from the injury itself. Mr. Wood, in his work on the Law of Master and Servant, section 368, says: "From the mere fact that an injury results to a servant from a latent defect in machinery or appliances of the business, no presumption of negligence on the master's part is raised. There must be evidence of neglect connecting him with the injury. . . . The mere fact that the machinery proves defective, and that the injury results therefrom, does not fix the master's liability. Prima facie, it is presumed that the master has discharged his duty to the servant, and that he was not at fault. Therefore the servant must overcome this presumption by proof of fault on the master's part, either by showing

Railroad v. Lindamood.

that he knew or ought to have known of the defects complained of. . . . The burden of proving negligence on the part of the master is upon the servant; and he is bound to show that the injury arose from defects known to the master, or which he would have known by the exercise of ordinary care, or that he has failed to observe precautions essential to the protection of the servant, which ordinary prudence would have suggested."

Again, at section 382, the same author says: "The servant seeking recovery for an injury takes the burden upon himself of establishing negligence on the part of the master, and due care on his own part. And he is met by two presumptions, both of which he must overcome in order to entitle him to recovery: First, that the master has discharged his duty to him, by providing suitable instrumentalities for his business, and in keeping them in condition; and this involves proof of something more than the mere fact that the injury resulted from a defect in the machinery. It imposes upon him the burden of showing that the master had notice of the defect, or, in the exercise of that ordinary care which he is bound to observe, he would have known it. When this is established he is met by another presumption, the force of which must be overcome by him, and that is that he assumed all the usual and ordinary hazards."

This rule rests in part on the ground that one charging negligence as the gravamen of his action must prove it. (*The Nitroglycerin Case,* 15 Wall., 524, 21 L. Ed.,

206), and in part upon the presumption of law, which, in absence of all evidence to the contrary, is in favor of the performance of duty (*Polk* v. *Kirtland,* 56 Tenn., 292). In one form or another it has been applied by this court in *Railroad* v. *Gurley,* 80 Tenn., 46, and *Railroad Company* v. *Duffield,* 80 Tenn., 63, 47 Am. Rep., 319, and *Railroad* v. *Stewart,* 81 Tenn., 432, and in other cases.

Mere conjectural testimony will not be sufficient to meet and overcome these presumptions. In *Sack* v. *Dolese,* 137 Ill., 129, 27 N. E., 62, the rule was applied to facts somewhat similar to those of the present case. In that, an employee attempted to stop a loaded car by the use of the brake, when it gave way, and he was thrown to the ground, sustaining severe injuries. As to the accident his testimony was as follows: "The car was still in the act of running slowly. I was holding with all my strength the brake to stop the car. Then I got a sort of push from the brake. It swung me about, and I fell down, and the car ran over me. That is all. The brake threw me down, around. I was taking hold of it with my might, and with all my strength. That is why it threw me. Something loosened on the chain below. The wheel in my hand turned. The chain gave way that is on the handle below on the brake."

The above is the sum of the testimony upon which a recovery was sought. There was no evidence as to what, if any, defect was in the brake chain; and there was none that the plaintiff was injured by reason of lack of skill

Railroad v. Lindamood.

in performing the work. His injury, said the court, "was clearly due to the breaking—and from no fault of his—of the appliance which he was handling. Therefore the only count of his declaration which the evidence would fit is the one charging the failure on the part of the appellees to furnish, in and about the work which the appellant was directed to do, proper cars, and suitable appliances and brakes for stopping and operating the same, and keep them in proper repair; and, by reason of the carelessness and negligence of appellees in that regard, plaintiff was injured."

The trial judge, at the close of the plaintiff's evidence, had instructed the jury to find the defendants not guilty, and it was insisted in the supreme court that this was error. That court, in disposing of this contention, said: "There was no evidence introduced or offered by plaintiff to show that the brake of this car was improperly constructed, or in what the defect in it consisted. The plaintiff's right to recover depends upon the proof of injurious negligence by defendant. . . . . He alleged such negligence in his declaration, and the burden was on him to prove it. Proving that the brake chain parted, or that something gave out, so that the brake wheel suddenly turned with him and threw him from the car, does not show that appellees were guilty of negligence." One of the questions for the plaintiff to answer, by satisfactory evidence to the jury, said the court, was, "Why did the brake chain part?"

111 Tenn.—30

There was one fact proven in that case which is not shown in the present, and that is, there had been no inspection of the cars on which the defective brake was; and the insistence, among others, was that the failure to inspect was negligence which of itself entitled the plaintiff to recover. In other words, the contention was that failure to inspect threw on the appellees the burden of showing the brake apparatus was properly constructed, and that there was no defect in it that an inspection would have disclosed. To this, however, the court replied in these words: "This imposes the burden on the wrong party, and compels the defendant to prove that the injury did not result from his negligence. The proposition goes upon an unwarrantable assumption, to wit, that the inspection would have disclosed the defective condition of the brake. That is an affirmative proposition to be shown by the evidence, and the burden of proving it rests upon him who asserts it. If plaintiff had shown that the fault in the brake was in fact known to appellees' brakeman or car inspector, but unknown to himself, he would have made out his case, and so, too, he would have made his case, had he shown that the defect was of such a nature that it would have been known to them if they had exercised due care. No defect is latent which an inspection will disclose; hence appellees would be charged with knowing what an inspection would inform them. But before a court and jury can say that their negligence to inspect the car was the cause of plaintiff's injury, it must be

shown by the evidence that the fault or defect in the appliance was one which a proper inspection would have made known to them." That court held that there was no error in the instruction of the trial judge to the jury to return a verdict of not guilty.

We have quoted from this opinion at such length because of the soundness of its reasoning, and the abundant citation of authority made by the court to sustain its conclusions. Among the authorities cited in support of its holding by that court, and more or less in point in the present case, are *Morrison* v. *Phillips*, 44 Wis., 405, 28 Am. Rep., 599; *Ballou* v. *Railway Co.*, 54 Wis., 257, 11 N. W., 559, 41 Am. Rep., 31; *Ladd* v. *Railroad Company*, 119 Mass., 412, 20 Am. Rep., 331; *Duffy* v. *Upton*, 113 Mass., 544; *Le Barron* v. *Ferry Co.*, 11 Allen, 312, 87 Am. Dec., 717; *De Graffe* v. *Railroad Company*, 76 N. Y., 125.

In *Soderman* v. *Kemp*, 145 N. Y., 427, 40 N. E., 212, it was held that, where a servant undertakes to recover against his master for an injury resulting from alleged negligence in the furnishing of appliances, it must be shown affirmatively that such negligence existed; that a recovery could not be rested upon a mere inference of some neglect on the part of the master. To the same effect are *Hughes* v. *C., N. O. & T. P. R. Co.*, 91 Ky., 526, 16 S. W., 275; *Dingley* v. *Star Knitting Co.*, 134 N. Y., 552, 32 S. W., 35; *L. & N. R. Co.* v. *Binion*, 98 Ala., 570, 14 South., 619; and many other cases.

But it is insisted the case of the plaintiff below was

made out upon certain testimony admitted over the objection of the defendant, and which it is now insisted was incompetent. The testimony in question is that which was referred to in a previous part of this opinion, and will now be considered.

M. Lindamood was the father of the defendant in error, and was at the time, and had been for many years, the master mechanic of this railroad company, having charge of its repair shops. He was introduced by the defendant in error as a witness. While it is necessarily inferable from his testimony that the car upon which the defendant in error was at the time of the accident had been in the shop for repairs, and under his control, yet he could not fix the date when it was there; nor did he then or at any time discover any infirmity in the brake staff or any of its connections. He made no examination after the accident occurred to ascertain whether there was any such infirmity. This might easily have been done, and the question put at rest as to whether either of the conditions charged in the declaration existed, but it was not done. It is also fairly inferable from this record that no complaint had ever been made of the working of this brake staff. From the amount of work that this road did with the limited number of cars at its command, we think there can be no doubt but that this car was in weekly use, if not oftener. The brake staff had been there for at least seventeen years. How long the chain and eyebolt had been used is not shown, but the deadwood against which it is

claimed that the eyebolt rubbed had been underneath the car for at least six or seven years; and yet, so far as this record discloses, no difficulty in the working of this brake staff had ever been discovered.    It would seem, therefore, that whatever occasioned the lurch or jerk that precipitated the defendant in error from that car was sudden and unexpected.    In this connection, and for the purpose of supplying the lack of affirmative evidence, the effort was made to establish the fact of negligence from mere inferences, rather than from proven facts.    To make good this claim of negligence, the testimony in question was introduced.

The questions put to Lindamood, and the answers give by him, are as follows:  "Q.   Describe how the brake operates when it is put on—how it stops a car?   A. This chain [the brake chain] is connected with the rod of the lever—a floating lever is connected with an eyebolt in the brake staff.   Then we turn the brake staff, and it works the chain, and winds it up around the staff, and pulls the lever forward, and brings the rod in there, and that presses the brake apart.  You wind on that, and it catches by the dog in the ratchet wheel.   Q.   The dog is a piece of iron that goes in the notches of the wheel to hold it?  A.  Yes, sir.   Q.   Where does the brakeman stand to use that?   A.   On this little board called the 'ratchet board,' on a box car.   Q.   How should that brake turn when in proper condition?   A.   Free of any obstruction, and to the right.   Q.   When a brake works freely, is there any lurching or jerking forward

suddenly when put on? A. No; it works smooth and even. Q. Until the brake is on tight? A. Yes, sir, until it is on with the tension—with all the tension you can put it on. Q. You may state to the jury what would cause, or could cause, a brake to lurch forward suddenly when being put on? A. The way our brakes are constructed, I can not conceive of anything unless a chain should break loose, or rod break, or a chain might wind up on itself, or there might be an obstruction to the eyebolt. Q. What would the eyebolt catch against? A. It would catch against the deadwood timber. Q. What would be the effect if it should? A. It would cause an obstruction, and stop the winding of the chain around the brake staff. Q. Suppose the brakeman should still put his weight against it? A. It might possibly free itself and give a lurch forward. Q. What would be the effect if the chain were too long, and would reach up and slip off? A. It would lurch forward, and have the same effect as any other obstruction that would keep it from turning."

One J. M. Smith was also introduced as a witness by the defendant in error. He knew nothing of the car or its condition, but undertook to testify as an expert. In describing the operation of the brake staff when used to control the movement of the car, he said: "If it [the brake chain] goes two-thirds of the way [around the brake chain] before taking effect on the wheels, it is a pretty good brake; and if it goes far enough to double up, and the chain wrap over the top, it is a little bit

dangerous.  Q.  Why is that?  A.  It might slip off.
Q.  What effect would that have on the brake wheel?
A.  It would fly around quick.  Q.  In what direction?
A.  The way you were putting the brake on.  Q.  Would a
brake in proper condition lurch forward that way, as
from the chain slipping off?  A.  I do not think so—
hardly ever.  Q.  What other way would account for
the brake suddenly going forward when the brake was
being put on?  A.  If the brake shaft were crooked, it
might slip around there and fall off.  It might come
around easy part of the way, and get tighter.  Q.  Look
at this model, and see if the brake staff should bind in
turning against the deadwood, and should go under it,
what would be the effect?  A. It might catch, if it were
too high.  Some time they get turned and catch a little,
but it does not amount to much; but, if it were too high,
it might rub and slip loose.  Q.  And cause the same
kind of motion?  A.  Yes, sir.  Q.  Would a brake in
good state of repair lurch forward when the brakeman
is putting it on?  A.  No sir."  One Thomas Brummitt
was examined as an expert, and gave the same kind of
testimony.

Going into the field of surmise, we can see no reason
why these witnesses did not conjecture, as additional
causes of the lurch or jerk, that the wheel itself had
given away under the strain, or that the eyebolt had
separated from either the brake staff or brake chain, or
the latter from the floating lever, or it from the beam, or

other defects which might as well account for this unexpected movement.

It may be, if the plaintiff below had shown by affirmative evidence that the eyebolt of this brake staff did rub tightly against the deadwood, or that the brake chain was so long as to double upon itself when the staff was turned, expert·testimony tending to show that in one case the eyebolt releasing itself from the obstruction occasioned by the pressure against the deadwood, or in the other the slipping of the chain where it had doubled itself in winding, would be likely to produce a lurch or a jerk, might have been competent. But in the absence of such evidence, could such testimony, purely speculative in its character, be introduced? From the mere fact that the lurch or jerk was experienced in turning the brake staff, was it competent to show that this might have been occasioned by either of the conditions referred to above? As we have already seen, the plaintiff, in order to maintain this action, was bound to overcome the presumption which the law indulges in favor of the employer; and certainly, in the absence of all affirmative proof to meet those presumptions, it cannot be competent for him to rely upon a mere inference, drawn itself from a presumption. For illustration, in the present case these witnesses are permitted to say that they presume a defect in the brake staff, because in its turning it lurched and jerked; and on this presumption they then infer that it would not have done so, save for the existence of one of the defects alleged in the declaration,

Railroad v. Lindamood.

or some other defect. Inferences may be drawn from established facts, but never from mere presumptions. 2 Whart. Ev. section 1226. As said by the supreme court of the United States in *U. S.* v. *Ross,* 92 U. S. 281, 23 L. Ed., 707, these were "inferences from inferences—presumptions resting on the basis of another presumption. Such a mode of arriving at a conclusion of fact is generally, if not universally, inadmissible. . . . The law requires an open, visible connection between the principal and evidentiary facts and the deduction from them, and does not permit a decision to be made on remote inferences."

In line with this, the supreme court of California, in *Cosgrove* v. *Pitman,* 103 Cal., 268-278, 37 Pac., 233, said: "Unless facts are shown from which negligence may be reasonably inferred, a jury should never be permitted to infer arbitrarily and without evidence that there was negligence. When a fact is established, some other fact may be justly inferred therefrom; but when a plaintiff, instead of presenting a fact or facts from which the negligence of the defendant may be reasonably inferred, gives to the jury only a presumption drawn from other facts, the jury are not to be allowed to infer negligence from such presumption. The inferences can not be drawn from a presumption, but must be founded upon some fact legally established." To like effect is *Douglass* v. *Mitchell's Ex'r,* 35 Pa., 443. If it be true, therefore, that the jury would not be authorized to make an inference from a mere presumption, certainly it was not

·competent for a witness to give testimony to the jury which embraces the same vice. *Xenia Bank* v. *Stewart,* 114 U. S., 231, 5 Sup. Ct., 845, 29 L. Ed., 101. See many ·cases illustrating this rule cited in ·Rose's Notes to *U. S:* v. *Ross, supra.*

We think the testimony was incompetent, and should have been excluded by the circuit judge.

We also think the circuit judge was in error in declining the following requests submitted by the plaintiff in error: Request 6: "If you are not able to determine whether accident was caused by a chain being too long, and wrapping and slipping off itself, or whether it was ·caused by the rubbing of the eyebolt or nut on the deadwood, and its sudden release therefrom, then I charge you that the plaintiff cannot recover on either of the two counts of his declaration." Request 7: "In an action for injuries claimed to have been sustained on ·account of defective appliances, it is presumed that the master has discharged his duty to the employee Walter Lindamood by providing suitable appliances, and by keeping them in proper condition; and the burden is on the plaintiff to show the contrary." Request 8: "The law furnishes a further presumption that, if the car was in good repair at a date prior to the accident, it continued to remain in a like good condition until the accident occurred. The burden is on the plaintiff to show that the contrary is true."

While it is true that the circuit judge gave in his ·charge to the jury some general rules applicable in such

Railroad v. Lindamood.

a case as the present, which were correct, yet, in view of the evidence upon which the plaintiff rested his right to recovery, we think the defendant below had a right to have applied for the guidance of the jury, in clear and explicit terms, the rules of the law invoked by it in its special requests to the facts of the case. Thus given, they would have afforded a safer guide than general rules embodied in a charge which embraces much else.

The assignments of error upon the action of the court with regard to the rule of estoppel invoked by the plaintiff in error upon pleading, as well as in the trial judge declining to require a bill of particulars from the plaintiff below, are overruled. Other assignments of error predicated upon the idea that the testimony which we have said should not have been admitted was competent become by our ruling of no importance, and therefore need not be ruled on.

But for the errors indicated the case is reversed and remanded.