C., N. O. & T. P. Ry. Co. *v.* Pearl Brown,
Administratrix.*

(*Knoxville.* September Term, 1928.)

Opinion filed December 8, 1928.

---

*As to constitutionality, application and effect of Federal Employers' Liability Act, see annotation in 47 L. R. A. (N. S.), 38; L. R. A., 1915C, 47.

H. M. Carr, for plaintiff in error.

W. Y. Boswell, for defendant in error.

Mr. Chief Justice Green delivered the opinion of the Court.

This suit was brought by the widow and administratrix of John Brown who was run over and killed by a train of the plaintiff in error. There was a judgment in favor of the administratrix in the trial court for $18,250. The Court of Appeals suggested a *remittitur* of $8250 and, that being accepted, the judgment was affirmed for $10,000. Plaintiff in error filed a petition for *certiorari*, which was granted, and the case has been fully argued in this Court.

The chief contention of plaintiff in error is that it was entitled to a directed verdict because (1) there was no evidence of negligence on its part, and (2) if there was negligence the deceased assumed the risk. It is conceded that deceased was an employee of an interstate carrier, engaged in interstate commerce at the time of his death, and that the Federal Employers' Liability Act controls.

The deceased Brown was a freight brakeman. On the night of the accident he was acting as rear brakeman on a freight train going north. His train had orders to take a siding at Helenwood, Tennessee, to permit the passage of a fast passenger train, known as No. 14, also going north. Brown's train headed into the north passing track at a switch about half a mile south of the depot at Helenwood. Another freight train was in this passing track ahead of Brown's train.

It was the duty of Brown after his train had passed into the siding to throw the switch so as to clear the main track. The proof indicates that he did this and walked across the northbound main track upon which No. 14

was expected. There are four tracks at this point, the northbound main track, the north passing track, the southbound main track and the south passing track.

Just about the time No. 14 passed the switch mentioned going north, a freight train passed this point going south. Brown was struck by the freight train while he was standing or walking on the southbound main track. The proof does not disclose whether he was standing on the southbound main track waiting for No. 14 to pass north, or whether he had crossed the southbound main track to the south passing track and was returning to the switch to throw it and permit his train to back out on the northbound main track.

Operating Rule No. 104 for the trains of plaintiff in error is as follows: "The normal position of a main track switch is set and locked for the main track, and employees must not unlock it, or stand within twenty feet of it while a train is approaching or passing; when practicable or safe they must take position on the opposite side of the track."

It is to be inferred from the proof that after Brown locked this switch, in compliance with the quoted rule, he undertook to take a position on the opposite side of the track from the switch until after No. 14 had passed. Proof indicates that there was a high bluff on the side of the passing track where the switch stood and that it would have been impracticable for Brown to have stood back from the switch on that side.

Brown was a man about fifty years of age. He had been employed on this line of road for many years, was a good railroad man according to the testimony, and familiar with the roadway and the method of operating trains on this division.

Campbell, the engineer on the train that struck Brown, was introduced as a witness for the plaintiff below. The accident occurred about four A. M. April 27, 1925. Campbell said that it was a dark, foggy morning and he could not see any distance ahead of his engine. What is known as the block system is in operation on this line of road, the block signals being about half a mile apart. Brown was struck by the engine about twenty or thirty feet south of one of these block signals. The engineer had his head out of the window looking for the block signal. He could not see it, on account of the fog, until he got right at it. About the same time, when he was about thirty feet distant, he saw Brown's light—or lantern of a man on the track ahead. Campbell testified that he at once blew the alarm whistle and applied the brakes. He saw Brown and struck him almost at the same time. There were thirty-three cars in the freight train and the train was brought to a stop after the caboose had passed some three or four car lengths beyond the body of Brown. Other pertinent facts will be developed in the course of the opinion.

All the proof tends to show that Campbell, on the freight train that struck Brown, blew the whistle of his engine, at an appropriate distance, for a road crossing between the station at Helenwood and the point of the accident. Also that Campbell blew the whistle as soon as he saw Brown and that he saw Brown as soon as he could have seen him in view of the prevailing fog. As we understand it, therefore, counsel for the administratrix does not now rely on any negligence in the matter of giving warning to the deceased of the approach of the freight train.

Counsel has summarized in his brief the various charges of negligence upon which he now rests the case of the administratrix.

He says that plaintiff in error was negligent in the operation of the train that killed Brown:

1. In running the train at the time of the accident in violation of a rule that prohibits a speed for freight trains in excess of thirty miles an hour.

2. In running the train in violation of a rule which requires that fixed signals, when obscured, must be approached under control and a stop made until it is known that the way is clear.

3. In running the train between the station platform at Helenwood and a passenger train without exercising due caution in violation of another rule.

4. In running the train, an inferior class train and extra train, by and through the Helenwood station and yard without caution, in violation of a rule.

5. In running the train down grade for more than three and one-half miles, through a station yard, over a grade crossing, by three trains already in the yard, over a fixed signal, through a dense fog, in violation of rules of the company and in disregard of the rules of common sense.

6. In running the train in violation "of the outstanding and paramount rule of the company, the same being a general rule and on the front pages of the book of rules, which rule was 'SAFETY FIRST.'"

The argument is that, had the train been proceeding with caution under the various rules mentioned, and as Brown had a right to expect any such train to approach him there would have been opportunity for Brown to have been discovered and the train stopped before he

was struck or at least opportunity for a warning to have been given, and for Brown to have gotten out of the way.

*(1)* Referring to the second specification of negligence, as to approaching a fixed signal, when obscured, under control, it seems to us on the proof that this rule is not applicable to a line of road operated under the block system. Where an obstruction occurs within a block, the signal at the end of the block goes red and the next signal, one-half mile distant, goes yellow. It is not necessary, therefore, in the operation of a train over such road to approach every signal under control. Every signal must be seen. If it is white, the engineer knows the next block is clear. He also knows there is no obstruction in the next succeeding block. It is not required that he should slow up his train until he comes to a yellow signal. Then he has a half mile before he comes to a red signal which precedes the obstructed block. If every signal had to be approached under control, the block system would be entirely useless and would destroy the effective operation of trains. All this is clear from the evidence on the trial—plaintiff's witnesses and defendant's witnesses. The rule mentioned was obviously intended for lines of road not protected by the block system. The deceased must have known that just as all the other railroad men who testified knew it. We do not, therefore, find any violation of this rule.

In regard to the third specification of negligence that plaintiff in error improperly ran this freight train between a station platform and a passenger train without exercising caution, all the proof on the subject is that No. 14 was not scheduled to stop at Helenwood, on the morning of the accident. One of the brakemen on the train that struck Brown testified that they would have

been advised if No. 14 was to stop at Helenwood and that they had no such advice on this occasion.

*(2)* The other specifications of negligence all come to the same thing, namely, that the train which killed Brown was being operated at the time of the accident at a speed that was negligent in view of the rules set out and the circumstances surrounding the scene of the accident.

On the trial below the administratrix, as before stated, introduced Campbell, the engineer of the southbound freight train, and Rupee, a brakeman on said train. Both of these witnesses testified that the train was running around thirty miles an hour according to their best judgment. For the defendant, another brakeman on said train named Robinson and a fireman on said train named Gooch, testified that the train was running about thirty miles an hour. Skidmore, the brakeman on Brown's train, and Meese, the conductor on Brown's train, testified that the southbound freight was running about thirty miles an hour.

The administratrix introduced several witnesses to whom a hypothetical question was submitted. In this question counsel undertook to state the grade of the track at the point of the accident, the distance the train ran after it hit Brown and other conditions, and asked witnesses how fast the train must have been running, under such circumstances, to have required such a distance for the stop. These witnesses estimated the speed of the train at from forty to fifty-five miles an hour.

The Court of Appeals was of opinion that only one of these witnesses had qualified as an expert and that the testimony of the others was improperly admitted. So as the case comes to us there is one witness, answering the hypothetical question, who puts the speed of the train

above thirty miles an hour. The other witnesses put the speed at thirty miles an hour or less.

Of course all the statements as to the speed of the train are but estimates. The speed of the train is not the determinative fact for it may be conceded (although it is not necessary for us to determine this question) that there was some evidence of negligence in the operation of said train.

Plaintiff's witness Campbell testified that he was running this train through Helenwood, at the time Brown was killed, in the usual and ordinary way. He testified that he was required to make his schedule and could not stop for fog. He further stated that he and Brown had often served on trains together, that Brown knew it was customary to make the schedule time regardless of fog; and that Brown was familiar with the manner in which trains were customarily run through Helenwood.

Rupee, another witness of plaintiff below and brakeman on the train which killed Brown, testified that the train was being operated at this time in the usual and customary way. The other brakeman, Robinson, a witness for defendant, testified to the same effect, as did Gooch, the fireman. Skidmore and Meese, brakeman and conductor on Brown's train, who saw the southbound train pass, likewise testified that there was nothing unusual in the manner of the operation of that train, no excessive speed, and that it was running in the usual and ordinary way that such trains ran through Helenwood.

These witnesses all knew Brown and testified as to his intelligence, his experience, and his familiarity with this railroad and the method of operating trains along this line.

Such being the proof, it necessarily follows that when Brown, standing away from the switch he had locked as

his duty required, took a position on the southbound main track, he assumed the risk of being struck by a train running on that track in the usual and ordinary manner. This is true, even though such customary operation involved negligence on the part of the railroad company.

(3) Since the enactment of the Federal Employers' Liability Act, the rules as to the assumption of risk by a railroad employee engaged in interstate commerce remain as they were at common law, except in cases where the violation by the carrier of a Federal Statute enacted for the safety of employees contributes to the employee's injury or death. *Seaboard A. L. R. Co.* v. *Horton,* 233 U. S., 492, 56 L. Ed., 1062.

The Supreme Court of the United States thus declares the doctrine:

"According to our decisions, the settled rule is not that it is the duty of an employee to exercise care to discover extraordinary dangers that may arise from the negligence of the employer, or of those for whose conduct the employer is responsible but that the employee may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them." *Chesapeake & O. R. Co.* v. *DeAtley,* 241 U. S., 310, 60 L. Ed., 1016.

More fully stating the exception to the general rule in the concluding words of the quotation above, in a later case, that Court said:

(4) "At common law the rule is well settled that a servant assumes extraordinary risks incident to his employment, or risks caused by the master's negligence,

which are obvious, or fully known and appreciated by him." *Boldt* v. *Pennsylvania R. Co.,* 245 U. S., 441, 62 L. Ed., 385.

So the Court held that a section foreman on a railroad, who was authorized to use a velocipede on the tracks in going to and from his work, assumed the risk of injury through negligence of train operators to maintain a lookout while the train was in motion. *Chesapeake & O. R. Co.* v. *Nixon,* 271 U. S., 218, 70 L. Ed., 914.

And, more in point, the Court held that an experienced engineer, on the route for many years, would be presumed to have known of the proximity of a mail crane to the track and to have assumed the risk of injury from this source, leaning out the cab window in the discharge of his duty. *Southern Pacific Company* v. *Berkshire,* 254 U. S., 415, 65 L. Ed., 335.

*(5)* The law in Tennessee is the same. *Norman* v. *Southern R. Co.,* 119 Tenn., 401; *South Memphis Brick Co.* v. *Dotson,* 8 Hig., 218; *Glasselli Chemical Co.* v. *Bettis,* 5 Hig., 103.

*(6)* There was nothing extraordinary in the manner of the operation of the train which killed Brown. If such operation be regarded as negligent, nevertheless, under all the proof, it was the usual and customary operation of such trains at such point, with which Brown's long experience had made him familiar, and he assumed the risk from which he met his death.

Reversed and dismissed.