NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY, Plaintiff in Error, v. C. W. POLLARD, Defendant in Error.

Western Section. May 8, 1931.

Petition for Certiorari denied by Supreme Court, March 26, 1932.

Walton Whitwell and H. H. Barr, both of Nashville, and Harry E. Jones, of Dresden, for plaintiff in error.

J. W. Rankin, of Martin, for defendant in error.

SENTER, J. For convenience the parties will be referred to as in the court below, C. W. Pollard, plaintiff, and the Nashville, Chattanooga & St. Louis Railway, defendant.

The appeal in this case is from a judgment in the circuit court in favor of plaintiff for personal injuries resulting in the loss of an eye by plaintiff while engaged as a section hand in the employ of the defendant, alleged to have resulted from the negligence of the defendant in the equipment and operation of one of its trains.

The declaration alleges, in substance, that the negligence of the defendant in the insufficiency of the locomotive and appliances and the operation of the same resulted in plaintiff being struck in the eye by a large hot cinder, or lump of coal; that the locomotive was not properly equipped with spark arrester and other appliances of the latest and most approved character to prevent the escape of large cinders, and was being negligently operated by the defendant at the time of the injury complained of. The declaration avers that the plaintiff was in the employ of the defendant as a section hand and while so engaged with other members of the section crew in repairing and working on the railroad tracks of the defendant, that one of defendant's passenger trains passed by and that the defendant stepped off of the track to a distance of about fifteen feet, and as the engine passed by plaintiff it emitted large quantities of hot cinders and that plaintiff was struck in the eye by a large hot cinder or lump of coal, resulting in the loss of the eye.

The defendant filed pleas of not guilty and accord and satisfaction. By the plea of not guilty plaintiff denied that the locomotive was not properly equipped and denied that it was being negligently operated at the time of the accident, and denied any negligence. By the plea of accord and satisfaction the defendant claimed that after the accident and after the loss of plaintiff's eye the defendant compromised and settled all claims which plaintiff had against defendant on account of said alleged injury for the sum of $100, which amount it paid to plaintiff and which amount plaintiff accepted in full satisfaction of any and all claims for damages against the defendant on account of said alleged injury, and signed a receipt and a release and a full acquittance.

To this special plea of accord and satisfaction plaintiff filed a replication, and by which he denied that he accepted the said sum of $100 in settlement of his claim against defendant for personal

injuries and that said sum was paid to and accepted by him to cover the loss of time only on account of the injury to his eye, and that his signature to the alleged release and receipt and acquittance was procured by the fraudulent imposition and misrepresentations made to him by the defendant's agent; that he was unable to read and relied upon the representations made to him by the authorized agent of the defendant.

At the conclusion of plaintiff's proof the defendant moved for a directed verdict in its favor, which motion was overruled. The motion was renewed at the conclusion of all the evidence, and was again overruled, and the case submitted to the jury upon the evidence and the charge of the court, resulting in a verdict by the jury in favor of plaintiff for the sum of $1,000.

A motion for a new trial was duly made by the defendant, which was overruled. From the action of the court in overruling its motion for a new trial and rendering judgment on the verdict, the defendant prayed and was granted an appeal in the nature of a writ of error to this court. The appeal has been perfected and errors assigned as follows:

"I.

"The trial court erred in overruling, disallowing and not sustaining each of the first, second and fourth grounds in Railway's motion for directed verdict made at the conclusion of all the evidence in the case, which grounds were in words and figures as follows:

"'First: There is no evidence upon which a verdict in favor of plaintiff can be predicated.

"'Second: The uncontroverted evidence shows that the verdict should be in favor of defendant.

"'Fourth: That the defendant has made out by the evidence a complete defence in this case.'

"II.

"The trial court erred in overruling, disallowing, and in not sustaining the third ground in Railway's motion for a directed verdict, made at the conclusion of all the evidence in the case, which ground was in words and figures as follows:

"'Third: The uncontroverted evidence shows that the plaintiff assumed the risk of the injuries alleged to have been sustained by him, and having assumed such risk, the plaintiff cannot recover in any sum.'

"III.

"The trial court erred in overruling, disallowing, and refusing to sustain Railway's first ground of its motion for a new trial, which was in words and figures as follows:

" 'First: There is no material evidence to sustain the verdict of the jury in this cause.'

"IV.

"The trial court erred in overruling, disallowing and refusing to sustain Railway's fourth ground of its motion for a new trial, which complains that the court erred in overruling its motion for a directed verdict made at the conclusion of all the evidence in the case, the grounds of the motion for a directed verdict being as follows:

" (These are the four grounds for the directed verdict above referred to under the first and second assignments of error.)"

By the fifth assignment it is urged that the trial judge erred in overruling the second and fifth grounds of defendant's motion for a new trial. The second ground referred to in the motion for a new trial is to the effect that the weight of the evidence preponderates against the verdict and in favor of the defendant, and the fifth ground referred to in the motion for a new trial is to the effect that the court erred in failing and refusing to apply the rule of evidence of the Federal courts applicable to directed verdicts in cases arising and tried under the Federal Employers' Liability Act, Chapter 149, Acts of Congress of April 22, 1908, and amendments thereof.

By the uncontroverted evidence it appears that the plaintiff was employed as a section hand by the defendant. On the day of the accident he was with the section crew engaged in raising the joints of the steel rails, and in so doing the cinder ballast under the ties was removed and then replaced so as to level the track. When the train approached the point where the section crew was at work the men constituting the crew stepped off of the track and out of the way of the coming train. The plaintiff was standing about fifteen feet from the track with others of the crew as the locomotive passed. Some substance struck him in the eye as the locomotive was passing the point where he was standing. He removed some cinders from his eye and some of the crew removed small particles of cinders from his eye and he was taken to an occulist in Union City who removed a small particle of cinder from his eye and at the time his eye was greatly inflamed. He was later sent to a hospital in Nashville by the defendant and his eye was there treated. He lost the sight of his eye.

The above facts are not controverted in the evidence. There is some conflict in the evidence on other questions. The plaintiff testified in his examination in chief that when the locomotive was in the act of passing him that a hot cinder as large as his thumb struck him in the eye and that a large quantity of small cinders, about the size of a pea, were emitted from the smokestack and that this was

an unusual shower of cinders to come from a locomotive. He testified that a large quantity of these cinders fell on him and struck him in the face with considerable force. He testified that after the train had passed he wiped several cinders from his eye and that they were about the size of match heads; that another of the section crew took his handkerchief and got other cinders out of his eye, and that when he got home other cinders or portions of cinders or small particles were gotten out of his eye by his wife by the use of silk tissue paper. He suffered considerably from the eye, describing it as a burning sensation and painful. When he was taken to Union City to be examined by an eye specialist, the eye specialist removed other particles from his eye. and he was then sent to Nashville to a hospital to be treated by one of the defendant's surgeons. Plaintiff testified on cross-examination that a large quantity of cinders were emitted from the smokestack as the locomotive passed him and that a large quantity of these cinders struck him in the face and eye and that the cinders that struck him in the eye were about the size of peas or match heads.

Appellant contends that there was a conflict in the evidence of plaintiff on his examination in chief and in his cross-examination; that he testified on his examination in chief that the cinder that struck him in the eye was as large as his thumb, and then, on cross-examination, testified that the cinders that struck him in the eye and which he removed from his eye were about the size of peas and matchheads. It is shown by the evidence that by the employment of the latest and most approved type of spark arrester the escape of small cinders from about the size of a pea and smaller cannot be prevented, and that this fact was well known to the plaintiff who admitted that passing trains threw out small cinders. It is therefore contended by appellant under the assignments of error that, the plaintiff having testified first, that the cinder that struck him in the eye was as large as his thumb and on cross-examination stated that the cinders that struck him in the eye were about the size of peas or match heads, brings his evidence under the rule that if the proof of the fact lies wholly with one witness, and he both affirms and denies it, and there is no explanation, it does not afford proof of either, citing Johnston v. N. C. & O. & T. P. R. R., 146 Tenn., 135, 240 S. W., 429; Stamper v. Venable, 117 Tenn., 557, 97 S. W., 812; Gunning v. Cooley, 281 U. S., 90, and other cases.

The rule insisted upon by appellant is supported by the authorities cited and has been recognized by both this court and the Supreme Court in the cases cited and relied upon by appellant. The question here presented is, does the evidence of plaintiff bring it within the rule so as to disentitle it to consideration on the theory that the conflict is irreconcilable. The plaintiff testified that an unusual

quantity of small cinders were emitted from the smokestack of this locomotive and that they were about the size of peas and match heads, referring to the general quantity of the cinders emitted, but stated that a cinder as large as his thumb struck him in the eye. He did not state positively that this large cinder came from the smokestack, and did not claim to see it come from the smokestack, but he testified that it was hot, and it is shown that it is only fresh cinders freshly emitted from the smokestack that would be hot, as cinders cool rapidly after coming from the smokestack and in contact with the air. It is true that on his cross-examination he was asked if the cinders which struck him in the eye and which came from the smokestack were not about the size of peas and match heads, and he answered that they were. In that connection he was not asked with reference to the large cinder which he had testified about on his examination in chief.

We do not think that the witness intended to contradict his former statement with reference to the large, hot cinder. He had testified that the great quantity of cinders that came from the smokestack and some of which struck him in the eye were about the size of peas or match heads, but he so stated in connection with the statement that one of the cinders that struck him in the eye and which inflicted the injury was a large, hot cinder. He also testified that he wiped small cinders from his eye, or small particles of cinders from his eye after the train passed. Witnesses for the defendant admitted that a spark arrester of proper construction and in proper condition would not permit a cinder as large as a man's thumb or the end of his thumb to pass through the meshes. We do not think under all the facts and circumstances as testified to by plaintiff both on his original and cross-examination show such a conflict as to the size of the cinder or cinders which struck him in the eye would warrant the application of the rule that he had both affirmed and denied, and that his evidence did not therefore prove either fact. To the contrary, we think a reading of his evidence does not disclose a real conflict.

On the question of the assumption of risk, an employee assumes all ordinary and usual risks incident to his employment, and all obvious dangers and all known dangers incident to his employment, whether obvious or hidden. C. N. O. & T. P. Ry. v. Brown, 158 Tenn., 75, 12 S. W. (2d), 381; Standard Knitting Mills v. Hickman, 133 Tenn., 43, 179 S. W., 385; C. N. O. Ry. v. Fox, 7 Higgins, 45, and numerous cases cited.

It is also the settled law that where there is no negligence proved, or where material facts are not in controversy, it is the duty of the trial judge to direct a verdict. Tyrus v. Kansas City, etc., Ry., 114 Tenn., 579, 86 S. W., 1074; R. R. v. Williford, 115 Tenn., 108, 88 S. W., 178; Norman v. R. R., 119 Tenn., 401, 104 S. W., 1088; South-

ern Ice Co. v. Black, 136 Tenn., 391, 189 S. W., 861, and numerous other cases.

Neither can a verdict be based upon speculation and conjecture, nor will a jury be permitted to indulge in guessing or mere conjecture. Where several acts, any one of which may have caused an injury, and for some of which the defendant would be liable, and for some of which the defendant is not liable, and the evidence does not show the particular act or fact causing the injury, a verdict could not be sustained. Nashville Ry. & Light Co. v. Harrison, 5 Tenn. App., 22; R. R. v. Lindamood, 111 Tenn., 457, 78 S. W., 99.

It is contended by appellant that where the suit is based on the Federal Employers Liability Act, even though tried in a state court, the federal rule with reference to evidence applies, and that the scintilla rule which obtains in Tennessee is not followed by the Supreme Court of the United States in cases brought under the Federal Employers Liability Act. Numerous cases by the Supreme Court of the United States are cited by appellant in support of this contention. C. M. & St. P. Ry. v. Coogan, 271 U. S., 474, 70 L. Ed., 1025; Barrett v. Virginian R. Co., 250 U. S., 474; Central Vermont Ry. v. White, 238 U. S., 507; Empire State Cattle Co. v. A. T. & S. F. Ry., 210 U. S., 1, and other cases.

In the fourth headnote to C. M. & St. P. R. Co. v. Coogan, supra. it is said:

"It is the duty of the trial judge to direct a verdict for one of the parties where the testimony and all the inferences which the jury may reasonably draw therefrom would be insufficient to support a different finding."

The rule as above stated by the Supreme Court of the United States was in connection with a suit brought under the Federal Employers Liability Act, as here, and is in effect the rule as recognized by the Supreme Court of this State. Railroad v. Lindamood, 111 Tenn., 457; Nashville Ry. & Light Co. v. Harrison, supra; Beaver v. Illinois Central R. R. Co., 3 Tenn. App., 67.

We understand the rule to be in the Federal courts as well as in our State courts, that if there is material evidence in support of an allegation of negligence it becomes a question to be submitted to the jury for determination. In the present case the plaintiff was struck in the eye by some substance as the locomotive in question passed the place where he was standing. If there was an unusual emission of sparks, and so unusual as not to be reasonably anticipated, or if the sparks so emitted were of unusual size and larger than sparks emitted from an engine properly equipped with spark arrester and properly operated, this would be some proof of negligence. The plaintiff testified that the quantity of cinders coming from the smokestack as the train passed the place where he was

standing was unusual and is referred to as a shower of cinders, and in unusual quantities. He also testified that one of these cinders was as large as his thumb. He testified that the cinders were hot, and it is shown that only hot cinders are thrown from the smokestack, and cinders that are not hot are picked up from the roadbed by the swirl and suction of the rapidly moving train. The proof that these cinders were hot is a clear indication that they were thrown from the smokestack and not picked up by the rapidly moving train from the roadbed. If it be admitted that the cinders that entered plaintiff's eye were small and such as are usual to be thrown from a smokestack properly equipped, but if these was a large cinder much larger than is usual to pass through the mesh of a properly equipped spark arrester, it would indicate that the spark arrester was out of order at the time, else the large cinder could not have been emitted. This, in connection with the proof of the unusually large quantity of cinders, would be some proof that the spark arrester on this particular engine at the particular time was out of order or not up to the standard of the art of equipment for locomotives as required by law.

We are therefore of the opinion that all of the assignments of error directed to the action of the court in declining to grant the motion for a directed verdict on the question of the negligence of the defendant must be overruled, there being some material evidence to support a verdict of negligence, without resorting to guess, conjecture or speculation by the jury. The eye specialist who first treated plaintiff's eye testified that inside the eye there was a small burn or indications of a burn, indicating that the cinder or cinders that entered plaintiff's eye were hot.

On the question of the plea of accord and satisfaction, it appears that plaintiff made two or more trips to Nashville to see the special agent of the defendant seeking an adjustment of his claim. It finally resulted in the defendant paying plaintiff $100, and plaintiff then signed a receipt. This receipt was in the form of a full release and acquittance of all claims against the defendant for the injuries complained or. Plaintiff testified that when he first called on the special agent at Nashville he asked for $8,000 as a settlement, and the special agent declined to consider the proposition and told him to leave. He testified that after he had returned to the railroad station in Nashville he received a message to remain over until the next day, and that he did remain over, and on the following day he again called on the special agent and again demanded $8,000 in settlement of his claim; that the special agent then said to him that it would be impossible for them to get together on the matter of a settlement, but he wanted to pay him for his time for the benefit of his family and that he would give him $100 to cover the lost time,

but that it was not to be considered as a settlement of his claim for damages for his injury. He testified that he could not read nor write, except that he had been taught by his wife to write his name. He testified that he signed the instrument, and that it was not read to him, but that he understood that it was to cover his lost time only and not to affect his rights to claim damages for his injury. The law agent or special agent of the defendant testified that there was no misrepresentation or misunderstanding, and that he read the document to plaintiff before plaintiff signed it and that plaintiff fully understood its contents. The young lady secretary testified to the same effect. This made a conflict in the evidence. This question was submitted to the jury under a proper instruction by the court, and was resolved in favor of the contention of plaintiff. In this connection we will add that we have examined the charge of the court and find it to be a full, clear and an excellent charge on all questions submitted to the jury. Appellant does not complain of the charge or any portion thereof. This was clearly a question for the determination of the jury as to whether the signature of plaintiff to the instrument was fairly procured. The jury passed upon that question. There was material evidence to support the finding of the jury.

It follows that we find no error, and the assignments of error are accordingly overruled and the judgment is affirmed. Appellant and sureties on the appeal' bond will pay the cost of this appeal.

'Owen and Heiskell, JJ., concur.